ASHLEY *v.* AGRICULTURAL LIFE INSURANCE COMPANY
OF AMERICA.

1. INSURANCE—LIFE INSURANCE—DOUBLE INDEMNITY—ACCIDENTAL
DEATH DEFINED—FREEZING.

While freezing, in and of itself, is not an accident, yet,
if joined with a fortuitous, unusual, unexpected circum-
stance or event, it may constitute an accident within the
terms of a life insurance policy providing double indemnity
in event of death resulting from accident.

2. SAME—"ACCIDENTAL" USED IN ORDINARY SENSE.

"Accidental," as used in a life insurance policy providing
for double indemnity in event of death of insured by ac-
cidental means, was used in the ordinary, popular sense
as meaning happening by chance; unexpectedly taking
place; not according to the usual course of things; or
not as expected, and if, in the act which precedes injury,
something unforeseen, unexpected, unusual occurs, which
produces the injury, then such injury has resulted through
accidental means.

3. SAME—DEATH FROM FREEZING WHILE LOST IS ACCIDENTAL.

Where, in an action on a policy of life insurance which
provided double indemnity in event of accidental death
of insured, it appeared that insured, while hunting in the
woods, became lost, and as a result of storm and exposure,
froze to death, an accidental death resulted within the
terms of the policy, entitling plaintiff to recover under
the double indemnity clause.

Error to Genesee; Collins (Joseph H.), J., presid-
ing.   Submitted October 7, 1927.   (Docket No. 62.)
Decided January 3, 1928.

Assumpsit by Emma Ashley against the Agricultural
Life Insurance Company of America on a policy of
insurance.   Judgment for plaintiff for less than

[1]Accident Insurance, 1 C. J. § 73; [2]Id., 1 C. J. § 72; [3]Id., 1 C.
J. § 73; 8 A. L. R. 231; 14 R. C. L. 1238; 4 R. C. L. Supp. 408;
6 R. C. L. Supp. 871.

amount claimed.    She brings error.    Reversed, and judgment ordered entered for full amount.

*Neithercut & Neithercut,* for appellant.

*Selwyn A. Lambert (Gault & Parker,* of counsel), for appellee.

CLARK, J.    Plaintiff, Emma Ashley, was beneficiary in a life insurance policy for $2,000 issued to her son, Harold Ashley, by defendant.    The insured died on or about November 20, 1926.    For this defendant admitted liability and its willingness to pay.    The controversy relates to what is called a double indemnity rider, attached to the policy, which provided that for an added premium, which was furnished, the defendant was to pay an additional $2,000 in the event of the death of the insured

"resulting from bodily injury, sustained and effected directly through external, violent and accidental means (murder or suicide, sane or insane, not included) exclusively and independently of all other causes, provided such death shall occur within ninety (90) days from the date of the accident."

Insured and a companion were camped for hunting deer at Moran in Mackinac county.    On Friday, November 19, 1926, with a guide they left camp and drove nearly 20 miles to some hardwooded upland, where they left the car and separated to hunt, insured, with sufficient clothing, following the track of a deer. They were to meet at the car later in the day.    Insured did not return.    The weather was pleasant but in the afternoon turned cold with wind and snow. That night his companions searched by following his tracks nearly three miles to the edge of a large swamp where it became evident he had become lost.    His tracks led in all directions in the snow "like a lost man would do."    He had attempted unsuccessfully there to kindle a fire.    Search continued aided by

woodsmen and State troopers.   Insured had wandered into the swamp and had walked about there and on small patches of upland therein.   On the Monday following his body frozen stiff was found over a log in the swamp, his feet, his hands, and a part of his head frozen into the thin ice that covered the swamp.

Appellant's statements in the brief that insured became lost and that he "came to his death by the exposure he was subjected to and the bitter cold weather" are approved by appellee.   Both sides requested directed verdict.   Plaintiff had judgment on directed verdict for $2,000 and interest, not $4,000 and interest, and she brings error.

Insured's becoming lost was not by design, volition, or intent.   It was not an expected or usual incident of hunting.   It was unusual and unexpected, fortuitous.   He became lost accidentally.   1 C. J. p. 390.   His death was caused by accidental exposure to storm and frost.   Freezing in and of itself is not an accident.   *Sherman* v. *Flint Spring Water Ice Co.,* 229 Mich. 648.   But if joined with a fortuitous, unusual, unexpected circumstance or event, it may constitute an accident.   *Mauch* v. *Bennett & Brown Lumber Co.,* 235 Mich. 496.   Deceased suffered an accidental death.   But it is contended that it was not produced through accidental means, or "through external, violent and accidental means."   These words just quoted were before the court in *United States Mut. Accident Ass'n* v. *Barry,* 131 U. S. 100 (9 Sup. Ct. 755), from which we quote:

"The court properly instructed the jury that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but, that if, in the act which precedes the injury, something

unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

We find no better statement of the rule. See notes in 14 A. L. R. 788, 7 A. L. R. 1131, and 8 A. L. R. 231, where many cases are reviewed. And, see, *Tuttle* v. *Insurance Co.*, 58 Mont. 121 (190 Pac. 993, 16 A. L. R. 601).

The authorities are not in harmony with respect to a distinction between accidental death and death by accidental means, but, conceding the distinction, we find no difficulty here under the rule above quoted. The authorities are quite in accord in holding that where one has fallen into water involuntarily and drowned, the death is through external, violent, and accidental means. Water is not an accident. But the fall which preceded the drowning, being unforeseen, unexpected, accidental, the water connected with the fortuitous mishap, the fall, became the accidental means, the instrument of death. So here, insured became lost accidentally, and thereby suffered accidental and enforced exposure to storm and frost and thereby died. The storm and frost were, in the season of the year and in this latitude, usual incidents of weather. They were not accidental. 1 C. J. p. 391. But because of insured's accidental exposure to them, the storm and frost so joined with the exposure became the accidental means of death. We see no difference in principle where one mistakenly and fortuitously loses his way and falls into water to his death, and where one mistakenly and fortuitously loses his way in the forest and thereby falls, a victim of the elements.

The case nearest in point which has come to our attention is *North West Com. Trav. Ass'n* v. *London Guarantee & Accident Co.*, 10 Manitoba, 537. There the insured froze to death as a result of the breaking

down of a conveyance in which he was riding and of the enforced exposure to storm and cold, and it was held that his death was caused through external, violent, and accidental means.

*Richards* v. *Insurance Co.*, 58 Utah, 622 (200 Pac. 1017, 17 A. L. R. 1183), involved a policy insuring against loss, etc., through accidental means. Insured was going into the desert to inspect a mine. He was not met by horses as expected and was compelled to make the journey on foot, and, misinformed of the distance, did not take water enough. He suffered sunstroke and died. We quote from the opinion:

"If the sunstroke in the present case was not, in and of itself, an accidental means, as we think it was, it, nevertheless, according to the undisputed evidence, resulted from accidental cause."

In the case at bar the death was unnatural, produced by violent means (1 C. J. p. 432, 14 R. C. L. p. 1249), which were also external, and, as we have seen, accidental.

"In a provision of an accident insurance policy restricting the liability to injuries effected through external, violent, and accidental means, the term 'external' refers to the means of the injury and not to the injury itself, and the fact that an injury is accidental and unnatural, naturally imports an external and violent agency as its cause. *Dezell* v. *Casualty Co.*, 176 Mo. 253 (75 S. W. 1102, 1105)." 2 Words and Phrases (2d Series), 417.

Reversed, with costs to plaintiff. As the question is of law, the cause is remanded for judgment in favor of plaintiff for the full amount.

FLANNIGAN, C. J., and FELLOWS, WIEST, BIRD, and SHARPE, JJ., concurred.

The late Justice SNOW and Justice MCDONALD did not sit.