TROUPE, Respondent, v. BENEFIT ASSN. OF RAILWAY EMPLOYEES, Appellant.

(231 N. W. 529.)

(File No. 6503. Opinion filed June 24, 1930.)

*McCoy & McCoy,* of Huron, for Appellant.

*Gardner & Churchill* and *George E. Longstaff,* all of Huron, for Respondent.

CAMPBELL, J. Plaintiff was a duly qualified member in good standing of defendant association, by virtue of which membership he held a certificate, by the terms of which he was entitled to participate in the benefit fund of defendant association in the amounts and manner as follows: "Against the results, hereinafter set forth, of and caused solely by External, Violent and Accidental means. * * *

"Accident Benefits.

"1. Disability Benefits at the rate of $40.00 dollars per month, for the time, not exceeding twenty-four months, that such accident, independently of all other causes, immediately, totally and continuously disables the member from the time of such accident from the performance of any and every kind of work or occupation for wages, or profit, and under the treatment of a legally qualified Physician or Surgeon."

In October, 1922, plaintiff was a locomtive engineer running between Huron, S. D., and Oakes, N. D., residing at Huron. On October 23, 1922, plaintiff, having made his regular run from Huron to Oakes, was laying over at Oakes awaiting his regular return run, and together with his fireman went duck hunting. On the hunting trip plaintiff unintentionally stepped into a hole and got wet. He was taken with chills and returned to Oakes, where he took some medicine and went to bed until time to take out his train on the regular run to Huron. He made the trip to Huron and immediately "laid off," being unable to work, and by that time had developed bronchial pneumonia. About the middle of Novem-

ber plaintiff's attending physician discovered what he suspected to be a tubercular condition, and by the last of December, 1922, plaintiff's disease had developed into active tuberculosis, and plaintiff was incapacitated and unable to work from October 23, 1922, to and including the time of the trial in the court below.

Plaintiff instituted this action in September, 1925, to recover the full amount of the disability benefit for twenty-four months, upon the theory that his disability for the entire period was caused solely and independently of all other causes by his stepping into the hole on the hunting trip.

At the close of the testimony both sides moved for a directed verdict, and the learned trial judge granted the motion of plaintiff and from a judgment in plaintiff's favor, entered upon said directed verdict, defendant has appealed.

The facts, as developed on the trial, appear about as follows: At the time in question plaintiff and his fireman had a two day lay-over at Oakes, and had been duck hunting the day before, and apparently decided to go again on October 23. They left Oakes about four o'clock in the morning of October 23, riding out on a train to a railroad crossing some distance from Oakes, at which point they got off and walked back along the track a mile or so to the slough where they intended to hunt. They arrived at the slough before daylight, and were walking around at the slough waiting for daylight to begin their hunting. The air was crisp and chilly, and there was thin ice on the water in the slough. Just before daylight, while going around near the edge of the slough to get into a place where he thought ducks would be flying, and he would get some shooting when it became light, plaintiff walking along in thick high grass and weeds, stepped into a small hole, which he failed to see, and got into the water over the top of his rubber boot, as a result of which one leg became wet clear to the hip. Plaintiff immediately went out on dry ground, took off his boots, stockings, trousers, and underwear. He wrung the water out of his trousers and underwear as well as he could and put them right back on, put on a dry pair of stockings, dried his boots out as well as he could with grass and hay, and, as he says, "I ran around some to get warmed up so I didn't think I would have any bad effects." Plaintiff then went on into or along the edge of the slough and stayed there hunting ducks. He continued hunting

until he started to take chills. He then went around to where his fireman was hunting and told the fireman that he was beginning to get chills, and thought he had better go to town, whereupon they walked down the track to Oakes. Just how long plaintiff stood around in the slough hunting after he got wet is not positively stated. Plaintiff himself says at one place that it was about an hour and a half or two hours after he had fallen in the hole that he started to have chills. He and his fireman walked down the railroad track to Oakes, a distance of some six or seven miles, and plaintiff says that on this walk he stopped and sat down a few times. They arrived at Oakes a little after one o'clock in the afternoon. It is entirely clear that plaintiff, after stepping into the hole and getting wet, remained standing around hunting ducks in his wet and damp condition for a period of several hours. According to his own testimony, he got wet shortly before daylight, and he did not discontinue his hunting until beginning a seven or eight mile walk to Oakes at such time that he arrived at Oakes a little after one in the afternoon.

▬ Appellant contends that for a man to step into a hole over his boots around the edge of a duck slough and get his feet wet is such a usual and customary performance in connection with a hunting trip that it cannot be called an accident. We find it unnecessary to consider this contention.

It may be conceded for the sake of argument that if respondent had not stepped in the hole he would not have gotten wet; that if he had not gotten wet he would not have been taken with chills; that if he had not been taken with chills he would not have developed pneumonia, and, but for the pneumonia, would not have developed tuberculosis. Assuming that stepping into the hole was an accident and, as a result thereof, respondent got wet, nevertheless the fact remains that, instead of walking briskly down the track to Oakes at that time, respondent voluntarily, needlessly, and negligently exposed himself thereafter by continuing his hunting and standing around in his wet and damp condition for a period of several hours on a chilly morning at and in the slough hunting ducks. We do not think it can be said that this voluntary and entirely unnecessary exposure was not an affirmative act, which was an independent and clearly contributing factor of the harm subsequently suffered by the respondent, and a majority of the

court are of the opinion that respondent has utterly failed to prove in this case (as he must prove to justify recovery) that his pneumonia, tuberculosis, and disability were caused solely and independently of all other causes by external, violent, and accidental means; to wit, the stepping into the hole near the edge of the slough, the only immediate result of which was to get respondent's leg wet to the hip. We think there was in this case, after the accident, an independent, intervening, and avoidable cause materially contributing to the ultimate injury; to wit, respondent's voluntary and affirmative act in negligently exposing himself after becoming wet.

The court erred in granting respondent's motion for directed verdict and in denying appellant's motion. The judgment appealed from is reversed, and the cause remanded, with directions to enter judgment in favor of appellant and against respondent, dismissing the action, and for costs.

POLLEY and BURCH, JJ., concur.

BROWN, P. J., and SHERWOOD, J., dissent.

BROWN, P. J. (dissenting). I dissent. I am satisfied that under any definition of the word "accident" known to lexicographers or lawyers, or even to duck hunters, undesignedly and unexpectedly stepping into a hole filled with water, two and one-half feet deep and about three feet across, concealed by tall grass and weeds, is an accident. See Webster's Dict., 1 C. J. 390, 391.

The concession for the sake of argument in the majority opinion admirably traces plaintiff's illness to its direct cause, independent of all other causes, the accidental stepping into the hidden hole. 1 C. J. 430 § 7578; Martin v. Travelers' Ins. Co. (Mo. App.) 247 S. W. 1024, 1025; Ashley v. Agricultural Ins. Co., 241 Mich. 441, 217 N. W. 27, 58 A. L. R. 1208; Druhl v. Equitable Life Assur. Society, 56 N. D. 517, 218 N. W. 220, 60 A. L. R. 962; New Amsterdam Casualty Co. v. Shields, 155 F. 54, 85 C. C. A. 122; Penn v. Standard L. & A. Co. 158 N. C. 29, 73 S. E. 99, 42 L. R. A. (N. S.) 593. The adversative conclusion in the majority opinion that respondent, instead of walking briskly down the track six or seven miles to Oakes at that time, needlessly and negligently exposed himself by continuing hunting and standing around in his wet and damp condition in icy water in the slough, and thereby brought about an independent, intervening, and avoidable cause,

152

materially contributing to his ultimate injury, is in my opinion unwarranted. The majority opinion itself intimates that for a duck hunter to continue hunting after getting wet is the usual and customary performance. It therefore could not be deemed negligence as a matter of law. 45 C. J. 706. Further, I am unable to find any evidence in the record to the effect that plaintiff, after getting wet, went on into the slough and continued hunting in the icy water of the slough until he started to take chills. Defendant introduced no evidence whatever. Plaintiff's testimony was that after drying his clothes as well as he could "we stayed there for some little while until I began having chills, then we started to walk into Oakes; that was about eight miles, * * * I did not wade through the slough that day. * * * I kept along the edge of the slough." And in any event plaintiff's right of recovery cannot be defeated by his negligence, if his illness was the direct result of the accident. His right of action is based upon insurance for which he had paid, and the fact that his illness might have been averted had he taken more prompt measures of prevention is no defense to an action on a policy or certificate of insurance. The reasoning of the majority would preclude a recovery had plaintiff accidentally stumbled and fallen upon a roll of rusty barb wire, concealed in the grass, and sustained cuts and scratches from which lockjaw resulted, if he did not hurry at once to some city where anti-tetanus serum treatment could be had and procure treatment.

SHERWOOD, J., concurs in dissent.