DECKER *v.* FEDERAL LIFE INSURANCE CO.

1. INSURANCE—"GORE" DEFINED.

Term "gore" as used in limited accident insurance policy, is accepted in its ordinary meaning as to pierce or wound with horns or tusk, in the absence of competent evidence that it has a different technical meaning.

2. SAME—QUESTION FOR JURY—"GORED" BY BULL.

In action for death benefit under a limited accident insurance policy, evidence that insured was "gored" by bull *held*, insufficient to present case for consideration by jury.

Appeal from Allegan; Miles (Fred T.), J. Submitted April 9, 1935. (Docket No. 65, Calendar No. 38,352.) Decided May 17, 1935.

Assumpsit by Ethel Decker against Federal Life Insurance Company, a foreign corporation, on an insurance policy for death indemnity. Verdict and judgment for plaintiff. Defendant appeals. Reversed.

*Leo W. Hoffman (Clare E. Hoffman* and *Carl E. Hoffman,* of counsel), for plaintiff.

*Norris, McPherson, Harrington & Waer,* for defendant.

BUTZEL, J. Ethel Decker, beneficiary under a policy issued to Lee A. Decker, brought suit against Federal Life Insurance Company for $500, the amount provided in the policy as death indemnity should the assured lose his life "by being kicked by a horse or mule or gored by a bull or cow." The policy further provided that it would not cover "in-

juries fatal or non-fatal, except drowning, of which there shall be no visible mark or contusion on the exterior of the body at the place of injury, the body itself in case of death not to be deemed such.''

On March 1, 1934, while the policy was in force, Decker, with Clarence L. Gunnett, attempted to slaughter a bull in a small enclosure. While Gunnett held a rope attached to a halter around the bull's head and drawn through a ring on the floor, Decker struck the animal on the back of the head in order to knock it down. The blow, however, did not have the desired effect, but instead the bull threw Gunnett to the icy floor and also in some manner struck Decker so that he was knocked six or eight feet away. When asked how the bull struck Decker, Gunnett stated that he thought it hit him with its head, because Decker was standing close to the animal's head when the accident occurred. One of the bull's horns curved down a slight distance, indicated by the witness but not shown on the record, and the other horn was a ''little short stubbed horn.'' There is no testimony showing that Decker was struck by the bull's horns. In fact, the record indicates that the blow may have been delivered by the animal with the side of its head. There was no visible mark or contusion showing that the insured had been pierced or stabbed in any manner.

When Decker arose he was white and, as Gunnett testified, held himself ''like this.'' The record again fails to show what signs the witness made. The two men, however, were able to proceed with the slaughtering of the bull. Decker went home at about 2 p. m. that day and never again returned to work. When he retired in the evening he told his wife of the accident. That same night be began to nauseate and bloat. Five or six days later he consulted a phy-

sician, who subsequently was summoned to Decker's home, where he found him suffering from nausea and inability to take food. Decker was taken to the hospital, where, on March 13th, he was operated on for a volvulus or twisting of the bowels. He died a few days later. According to the attending physician's certificate of death, the cause was given as:

"Stoppage of bowels (obstructions) following an injury to right side—causing paralysis of bowels."

In answer to the question:

"State what outward and visible signs of bodily injury you discovered at the time of your first visit to the deceased after the injury and give full description of the injury,"

the physician answered:

"None, except tenderness and distention of right side in region of liver."

According to the statement attached to the death certificate the principal cause of death was given as:

"Intestinal obstruction due to volvulus. Date of operation, March 13, 34. Condition for which performed,—intestinal obstruction. Organ or part affected,—small intestine."

The certificate contained the further statement that decedent was struck in the abdomen by a bull on the day of onset. The record shows that some time previous to the encounter Decker had undergone a serious abdominal operation.

The policy, issued for a comparatively small premium, insured against injuries resulting only from a limited number of causes. Notwithstanding defendant's objection to the submission of the case to the jury, on the theory that there was a great deal

of uncertainty as to the exact manner in which decedent was struck, and although the testimony did not show that decedent had been gored by a bull, or that there were visible marks or contusions on his abdomen as a result of the accident, the trial judge permitted the jury to consider the case, and a verdict was rendered in favor of plaintiff. Despite the able and ingenious presentation of plaintiff's case, in which it is claimed that "gore" may mean "wound," and "wound" may mean "injury," we must accept the term "gore" in its ordinary meaning, as commonly known and understood, in the absence of a showing by plaintiff by competent evidence that the term has a different technical meaning as used in the policy here involved. *Continental Hose Co.* v. *City of Fargo,* 17 N. D. 5 (114 N. W. 834). According to the latest edition of Webster's New International Dictionary, Merriam-Webster 1935, the term "gore" is defined:

"To pierce, stab. To pierce or penetrate with a pointed instrument, as a spear; to stab. Obs. except specif., of horned or tusked animals, to pierce or wound with the horns or tusk. Intransitive: To pierce with the horns or tusk."

The evidence shows that plaintiff's decedent was not gored. It is therefore unnecessary to consider plaintiff's claim that the distention of the abdomen accompanying a volvulus is a visible mark or contusion on the exterior of the body at the place of injury. Decedent may have received his fatal injury in a number of different ways. To hold that it resulted from goring by a bull would be to indulge in remote conjecture, not supported by competent evidence. *Slater* v. *Federal Life Ins. Co.,* 262 Mich. 85.

It is admitted that a small undisputed amount is due to plaintiff under another clause of the policy. The judgment will be reversed, with costs to defendant, and the case remanded to the trial court to enter judgment in accordance with this opinion.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.