Henry A. **MINTON**, Plaintiff,

v.

**STUYVESANT LIFE INSURANCE COM-
PANY, a corporation, Defendant.**

Civ. No. R–2658 BRT.

United States District Court,
D. Nevada.

Feb. 28, 1974.

Joesph J. Kay, Jr., Ltd., Reno, Nev.,
for plaintiff.

Richard P. Wait, Ltd., Reno, Nev., for
defendant.

## DECISION

BRUCE R. THOMPSON, District
Judge.

This is an action on a group life in-
surance policy issued by defendant,
Stuyvesant Life Insurance Company, to
insure the employees of GAC Corpora-
tion. Plaintiff, Henry A. Minton, is a
citizen of the State of Nevada and de-
fendant is a citizen of the State of
Pennsylvania. This Court has jurisdic-
tion under 28 U.S.C. § 1332.

The insurance policy in question in-
sured the plaintiff's wife for the sum of
$30,000, and that is the amount for
which plaintiff prays, together with in-
terest from September 30, 1970.

The schedule of benefits relates to
specific types of "injury" to an insured
person, including loss of life. The speci-
fied hazard clause reads as follows:

" 'Injury' whenever used in this
Certificate means bodily injury caused
by an accident and resulting directly
and independently of all other causes,
provided such injury is sustained by
the Insured Person while the Policy is
in force with respect to such person
and under the circumstances and in
the manner described under the Sec-
tion Specified Hazard, of this Certifi-
cate."

The specific exclusions in the policy
are (1) suicide or intentionally self-in-
flicted injury; (2) bacterial infection;
(3) medical or surgical treatment; (4)
war or any act of war; (5) injuries sus-
tained while in the armed forces of any
country; (6) hernia of any kind; (7)
and (8) various injuries sustained while
riding in or flying aircraft. None of
the specific exclusions applies to this
case.

The insured, Laurel Jean Minton, the
wife of plaintiff, died in Reno, Nevada
on September 30, 1970. The evidence
shows that she was a chronic alcoholic.
On the day prior to her death, she was
found by her husband and son in an un-
conscious condition in a bathtub full of
water. There were peculiar red burned

areas across her torso. She was taken to the hospital and, according to reliable medical opinion, was in such severe shock that she was, to all intents and purposes, dead upon arrival at the hospital although heroic efforts maintained her vital signs until the following morning when she died. At the time of her admission to the hospital, her blood alcohol was 0.422 grams per 100 cubic centimeters of blood. At the time of her death, her blood alcohol was 0.250. An autopsy was performed which shows that the insured had second and third degree burns covering approximately fifteen per cent of the body. In addition to the blood ethyl alcohol of 0.250, the toxicology disclosed a trace of isopropyl and a trace of acetone. Tests for alkaloids and barbiturates were negative. Examination of the liver disclosed early cirrhosis, acute passive venous congestion and moderate fatty infiltration. Examination of the brain disclosed cerebral edema. The cause of death was stated to be "acute ingestion of ethynol and unknown toxin or toxins."

Two well qualified pathologists testified. Dr. Anton Paul Sohn, the Pathologist at the Washoe Medical Center in Reno who performed the autopsy, expressed his opinion that the cause of death was acute ingestion of alcohol and unknown toxin or toxins. He explained that excessive ingestion of ethynol depresses the central nervous system and may cause severe shock and death. There was no explanation for the traces of acetone and isotropol alcohol in the blood but these toxins were in insignificant quantities and would not cause death. Dr. Sohn believed that the burns may have been a slight contributing cause of death but believed it highly unlikely that the burns intensified the shock and depression to a material degree. He believed the burns were not caused by scalding water because there were no burns on the buttocks and back. Mrs. Minton had been found sitting in a bathtub filled with water to her breasts. Dr. Sohn found that Mrs. Minton had minimal early cirrhosis of the liver and her liver was slightly enlarged and there was some fatty distrophy of the liver but the liver had not degenerated to a degree which would have reduced her life expectancy. There was no indication that death was caused or contributed to by infection or disease.

Dr. George S. Loquvam, the Director of the Institute of Forensic Sciences at Oakland, California, testified on behalf of the defendant. He summarized his findings from the medical records, the autopsy report, the microscopic slides of Mrs. Minton's tissues, the photographs of Mrs. Minton and Mr. Minton's testimony regarding her alcoholism and the condition in which she was found before being taken to the hospital. He expressed the opinion that the stripes of burned areas on her torso were hot water burns. This seems reasonable inasmuch as if Mrs. Minton, while in the bathtub in a semi-comatose condition, had turned on hot water, the hot water would have remained on top and could easily have caused the burns. The absence of burns on her buttocks and back is consistent with this explanation. Dr. Loquvam said that the liver was diseased, that is, that there was considerable fatty distrophy of the liver (not technically cirrhosis), and that the cause of death was a natural one, that is, liver failure accompanied by acute alcoholic intoxication. On cross-examination, Dr. Loquvam agreed that acute ingestion of ethynol on a single occasion can cause death for the reasons given by Dr. Sohn. He also stated that death caused by fatty distrophy of the liver is mysterious. Medical science does not know why death occurs but in many, many cases death is properly attributable to fatty distrophy of the liver because no other cause is indicated. He agreed that Mrs. Minton's liver degeneration was in an early stage. It is also interesting to note that from the time that Mrs. Minton was admitted to the hospital at 5:20 o'clock p. m. on September 29, 1970, until her death at 7:20 o'clock a. m. on September 30, 1970, her blood alcohol reduction in fourteen hours was from 0.-

422 to 0.250. Normal liver metabolizes alcohol at 0.015 per hour; thus Mrs. Minton's liver was functioning in near normal range during her final hours. This, of course, is not a completely accurate computation because Mrs. Minton was receiving some blood transfusions while in the hospital.

Reviewing the evidence as a whole, the preponderance of the evidence clearly shows that the cause of death was acute ingestion of ethynol. There is no evidence to support a finding of suicide or intentional self-inflicted injury. Mrs. Minton was not depressed. The family was moving into a new home. The fact that she was taking a bath is not consistent with a finding of suicide or intentionally self-inflicted injury. There was no evidence of bacterial infection and none of the specific exclusions in the policy apply. Accordingly, we are left with a determination of whether this death was "caused by an accident" within the meaning of the insurance policy.

Nevada has consistently approved the general principle that provisions of an insurance policy should be interpreted in favor of the insured. Gerhauser v. N. B. & M. Ins. Co., 7 Nev. 174 (1871); Intercoast Mutual v. Anderson, 75 Nev. 457, 463, 345 P.2d 762 (1959). No Nevada cases attempt to define the term "accident" in an insurance policy. Continental Casualty Co. v. Gardner, 78 Nev. 218, 370 P.2d 957 (1962), concludes that it is a question of fact for the jury or the Court as the case may be.

■ The usual definition of accident and the one we adopt is that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen. 1972 Insurance Counsel Journal, Vol. 3, p. 331; 41 A.L.R.3rd 654, at 656; 52 A.L. R.2d 1083, at 1085; 44 Am.Jur.2nd, p. 64. We also observe that under the instant policy, we are not concerned with the distinction made in many precedents between death by "accident" and death incurred by "accidental means." See,

for example, Gordon v. Metropolitan Life Ins. Co., 256 Md. 320, 260 A.2d 338 (1970). The two precedents cited by defendant to this Court (the Gordon case, supra, and Aubuchon v. Metropolitan Life Ins. Co., 142 F.2d 20 (8th Cir. 1944)) are of this type. These cases hold that death which is the unexpected result of a wholly intentional act is not a death from accidental means.

■ The courts, however, which have been concerned only with interpreting and applying the term "accident" have, with substantial uniformity, reached the conclusion that if the death results from the voluntary act of the victim, but the result is unexpected, unanticipated and unforeseen, it is an accidental death. Metropolitan Life Insurance Co. v. Main, 383 F.2d 952 (5th Cir. 1967); Malanga v. Royal Indemnity Co., 101 Ariz. 588, 422 P.2d 704 (1967); United American Life Ins. Co. v. Beadel, 13 Ariz.App. 196, 475 P.2d 288 (1971). That is this case.

We are also impressed with the reasoning of many of the insurance cases to the effect that the absence of a specific exclusion in the policy drawn by the insurer supports a liberal interpretation of the coverage. It would have been easy in the instant policy to exclude injury caused or contributed to by alcoholism or consumption of alcoholic beverages or drug abuse. The absence of such an exclusion supports a conclusion that unexpected, unforeseen and unanticipated death from acute ingestion of alcohol is an accidental death. Modern health, accident and life group policies covering thousands of people of varied backgrounds, occupations and habits—frequently issued without investigation or medical examination—inferably have been written on the basis that the broad dissemination of the risk is economic justification for eliminating the many restrictive exclusions and technical loopholes found in single insured insurance contracts interpreted in the earlier cases.

Accordingly, judgment shall be entered for plaintiff for Thirty Thousand Dollars ($30,000), together with interest

at the rate of seven per cent (7%) per annum from September 30, 1970. Plaintiff shall submit an appropriate form of judgment within five (5) days.