COLLINS v NATIONWIDE LIFE INSURANCE COMPANY

Docket No. 63577. Decided July 16, 1980. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the district court for further proceedings.

Juliet M. Collins brought an action against Nationwide Life Insurance Company under the double indemnity provision of a group life and accident insurance policy on her husband, Frank R. Collins. The insured died of acute alcoholic intoxication. The 39th District Court, William B. Ward, J., rendered summary judgment for the defendant on the ground that the cause of death did not fall within the policy definition of accidental bodily injury. After intermediate appeals, upon remand from the Supreme Court, the Court of Appeals, D. C. Riley and J. H. Gillis, JJ. (M. F. Cavanagh, P.J., dissenting), held that the decedent's voluntary act of intoxication which resulted in a reasonably foreseeable consequence was not "accidental" (Docket No. 78-5527). The plaintiff applies for leave to appeal. In a per curiam opinion signed by Justices Kavanagh, Williams, Levin, Fitzgerald, Ryan, and Moody, Chief Justice Coleman dissenting, the Supreme Court *held:*

1. A distinction has arisen in many states between the term "accidental means" and the terms "accident", "accidental death", and "accidental bodily injuries". The more restrictive term "accidental means" refers to the occurrence or happening which produces the result, rather than the result. It is concerned with the cause of the harm rather than the character of the harm. It was error to rely on cases involving "accidental means" in this case, which requires only that the decedent sustain "accidental bodily injuries". The inquiry here is not whether the agency effecting the death or injury can be termed accidental, but whether the injury itself was accidental.

2. The proper test of "accidental" is not that the conse-

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur 2d, Insurance §§ 1219-1229.
[2,3] 44 Am Jur 2d, Insurance §§ 1229-1231.
[3,4] 44 Am Jur 2d, Insurance §§ 1289, 1290.

quences of the decedent's voluntary act were not reasonably foreseeable, but that the consequences were not in fact foreseen. The "reasonably foreseeable" test improperly uses the definition of foreseeability set forth in tort cases. In order to defeat recovery under the double indemnity provision involved in this case, the insured must have intended or expected that his conduct would in all probability result in his death. Negligence alone is not sufficient to prevent the death from being an accident within the meaning of the policy. This construction of the policy language, absent specific definition by the insurer, most closely comports with what the insured expects when he contracts to insure against the unexpected.

3. Where an insured dies as the result of an intentional act, such as voluntary intoxication, but did not intend or expect death to result, the death is accidental for the purposes of an accidental death policy such as the one in this case. In this case, although the decedent's introduction of alcohol into his body was intentional, the factfinder must determine whether he intended or expected it to have fatal consequences. In addition, the jury must determine whether the deceased suffered "internal injuries revealed by an autopsy", one of the exceptions from the policy requirement that the injuries be evidenced by a visible contusion or wound on the exterior of the body.

Reversed and remanded to the district court.

Justice Coleman dissented. It strains credulity to conclude that the intent of the parties to the contract encompassed unintentional death by overindulgence in alcohol.

### OPINION OF THE COURT

1. INSURANCE — ACCIDENT POLICY — ACCIDENTAL BODILY INJURIES.

   The inquiry in a claim for double indemnity under an accident insurance policy which requires only that the insured sustain "accidental bodily injuries" is not whether the agency effecting the death or injury can be termed accidental, but whether the injury itself was accidental.

2. INSURANCE — ACCIDENT POLICY — ACCIDENTAL BODILY INJURIES — FORESEEABILITY.

   If death results from the voluntary act of the victim, but the result is unexpected, unanticipated, and unforeseen, it is an accidental death within the meaning of an insurance policy which provides double indemnity for death resulting from accidental bodily injuries; a requirement that the consequences of the decedent's act be not reasonably foreseeable, a definition

found in tort cases, is improper in an accidental death insurance case.

3. INSURANCE — ACCIDENT POLICY — ACCIDENTAL BODILY INJURIES — VOLUNTARY INTOXICATION.

A death is accidental for the purposes of an insurance policy insuring against death resulting from accidental bodily injuries where the insured dies as the result of an intentional act such as voluntary intoxication, but did not intend or expect death to result.

DISSENTING OPINION BY COLEMAN, C.J.

4. INSURANCE — ACCIDENT POLICY — ACCIDENTAL BODILY INJURIES — VOLUNTARY INTOXICATION.

*It strains credulity to conclude that the intent of the parties to an insurance policy providing double indemnity for death resulting from accidental bodily injuries encompassed unintentional death by overindulgence in alcohol.*

*La Barge & Dinning, P.C.,* by *Ronald H. Greve,* for plaintiff.

*Robert B. Tatham (Norman L. Zemke,* of counsel) for defendant.

PER CURIAM. Plaintiff's husband died on December 29, 1973, as a result of acute alcoholic intoxication. An autopsy disclosed that the deceased had a blood alcohol level of .37 percent. Dr. Spitz, who performed the autopsy, testified, by deposition, that the abnormally high blood alcohol level resulted in fluid accumulation in decedent's lungs which caused a strain on his heart and, ultimately, his death. There was no evidence of external injury, other than a superficial abrasion which was unrelated to the cause of death.

Defendant insurance company paid plaintiff $10,000, the face amount of an accidental death and dismemberment policy issued to decedent. Plaintiff filed suit when defendant refused to pay an additional $10,000 under the double indemnity

provision in the policy which provides coverage for "accidental bodily injuries which are evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning or internal injuries revealed by an autopsy) * * *".[1]

The district court found no cause of action in favor of defendant, holding that the cause of death did not fall within the policy's definition of accidental bodily injury. The circuit court reversed, finding that the policy was ambiguous and construing it to include death from alcoholic intoxication.

The Court of Appeals agreed with the district court, holding that plaintiff had failed to meet the threshold requirement of establishing a "visible contusion or wound on the exterior of the body" which caused the death. This Court reversed the Court of Appeals by order, stating that the medical testimony of Dr. Spitz "presented a jury-submissible question as to whether the deceased suffered 'internal injuries revealed by an autopsy' ". We remanded to the Court of Appeals to decide whether injury or death resulting from voluntary intoxication can constitute "accidental injury or death". 403 Mich 832 (1978). On remand, the Court of Appeals, CAVANAGH, P.J., dissenting, answered this question in the negative. *Collins v Nationwide Life Ins Co,* 90 Mich App 399; 282 NW2d 8 (1979). We disagree with the Court of Appeals resolution

---

[1] In pertinent part, the insurance policy provides:

"Upon receipt of due proof that an employee, while insured for accidental death and dismemberment benefits under the policy, has sustained accidental bodily injuries which are evidenced by visible contusions or wounds on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy) and that such injuries have resulted within ninety days from the date of their occurrence and without other contributing cause, in any of the losses set forth below, the company will pay to such employee, if living, otherwise to the beneficiary, the amount of insurance specified for such loss in the following table of losses, * * *."

There are six specific exclusions, none of which is at issue here.

of this issue and, accordingly, remand to the district court for further proceedings consistent with this opinion.

At the outset, it is important to note that a distinction has arisen in many states between the term "accidental means" and the terms "accident", "accidental death", and, as used in the policy at issue, "accidental bodily injuries".[2] This distinction is succinctly explained in 10 Couch, Insurance (2d ed), § 41:28, pp 49-50:

> "[A]ccidental death is an unintended and undesigned result arising from acts voluntarily done, whereas death by accidental means is a result arising from acts unintentionally done or events undesignedly occurring. The term 'accidental means' refers to the occurrence or happening which produces the result, rather than the result; it is concerned with the cause of the harm rather than the character of the harm." (Footnotes omitted.)

All of the cases relied upon by the Court of Appeals majority in the instant case involve policies containing the more restrictive language requiring death from "accidental means". Reliance

---

[2] See, e.g., *Minton v Stuyvesant Life Ins Co,* 373 F Supp 33 (D Nev, 1974); *Catania v State Farm Life Ins Co,* 95 Nev Adv 147; 598 P2d 631 (1979); *Pilcher v New York Life Ins Co,* 25 Cal App 3d 717; 102 Cal Rptr 82 (1972); *Beckham v Travelers Ins Co,* 424 Pa 107; 225 A2d 532 (1967); 166 ALR 469; 52 ALR2d 1083; 44 Am Jur 2d, Insurance, § 1221, p 67; 10 Couch, Insurance, § 41.28, p 47.

A growing number of states have rejected this distinction which Mr. Justice Cardozo in his now-famous dissent in *Landress v Phoenix Mutual Life Ins Co,* 291 US 491; 54 S Ct 461; 78 L Ed 934 (1934), prophesied would "plunge this branch of the law into a Serbonian Bog". See, e.g., *Catania v State Farm Life Ins Co, supra;* and *Beckham v Travelers Ins Co, supra,* and the cases cited therein. The Supreme Court of Colorado, commenting on this quotation, stated, "Whatever kind of a bog that is we concur." *Equitable Life Assurance Society v Hemenover,* 100 Colo 231, 235; 67 P2d 80 (1937). It is unnecessary for us to determine if Michigan recognizes this distinction because the language of the policy we are concerned with allows us to avoid the "Serbonian Bog".

on these cases was error, as the language in the policy before us requires only that the insured sustain "accidental bodily injuries". Thus, the inquiry is not whether the "agency effecting the death or injury can be termed accidental", 90 Mich App 401. Rather, the inquiry is whether the injury itself was accidental.

We also disagree with the Court of Appeals definition of the term "accidental" which would require that the consequences of decedent's act must not be reasonably foreseeable in order to be termed "accidental". The proper test for determining whether an accidental injury or death has occurred for purposes of an insurance policy such as the one before us was stated in *Minton v Stuyvesant Life Ins Co*, 373 F Supp 33, 35 (D Nev, 1974), a case also involving death caused by acute alcoholic ingestion.

"The courts, however, which have been concerned only with interpreting and applying the term "accident" have, with substantial uniformity, reached the conclusion that if death results from the voluntary act of the victim, but the result is unexpected, unanticipated and unforeseen, it is an accidental death."[3]

The Court of Appeals requirement that the consequences of decedent's act must not be reasonably foreseeable improperly utilizes the definition of foreseeability set forth in tort cases. However, neither the level of foreseeability requisite for tort liability nor for criminal recklessness is sufficient to render a mishap a "nonaccident" when conduct is measured against the terms of an accidental death insurance policy. *Marsh v Metropolitan Life*

[3] See, also, *Ashley v Agricultural Life Ins Co of America*, 241 Mich 441; 217 NW 27 (1928), for a similar definition of "accidental" used in the context of construing an "accidental means" policy.

*Ins Co, Inc,* 70 Ill App 3d 790; 388 NE2d 1121 (1979).[4]

The question is not whether the death was reasonably foreseeable, but whether the death was in fact foreseen by the insured. In order to defeat recovery under a double indemnity provision, as involved herein, the insured must have intended or expected that his conduct would in all probability result in his death. Negligence alone is not sufficient to prevent the death from being an accident within the meaning of the policy.

We find that this construction of the policy language, absent specific definition by the insurer, most closely comports with what the insured expects when he contracts to insure against the unexpected. One who purchases an accidental death policy intends to provide benefits to his beneficiary in the event he should suffer death resulting from accident as opposed to death resulting from other means, such as suicide, disease or natural death.

"Insurance policies upon which the public relies for security in case of accident should be free from fine distinctions which few can understand until pointed out by lawyers and judges * * *." *Knight v Metropolitan Life Ins Co,* 103 Ariz 100, 104; 437 P2d 416, 420 (1968).

In conclusion, we hold that where an insured

---

[4] See, also, *Gulf Life Ins Co v Nash,* 97 So 2d 4 (Fla, 1957), where the Court said:

"It seems to me that such doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce liability."

dies as the result of an intentional act, such as voluntary intoxication, but did not intend or expect death to result, such death is accidental for the purposes of an accidental death policy as involved herein. In the instant case, although the decedent's introduction of alcohol into his body was intentional, the factfinder must determine whether he intended or expected it to have fatal consequences. In addition, the jury must determine whether the deceased suffered "internal injuries revealed by an autopsy" in accordance with our previous order in this case.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the judgment of the Court of Appeals and remand to the district court for further proceedings consistent with this opinion. Costs to appellant.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

COLEMAN, C.J. I dissent.

I cannot agree that double indemnity should be paid for drinking one's self to death. It strains credulity to conclude that the intent of the parties to the contract encompassed unintentional death by overindulgence in alcohol.