NEHRA v PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY

Docket No. 104076. Decided March 6, 1997. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court. Rehearing denied 454 Mich 1217.

Samuel A. Nehra, D.D.S., sought declaratory judgment in Wayne Circuit Court against his disability insurer, Provident Life & Accident Insurance Company, that the carpal tunnel syndrome from which he suffers is an injury under two disability policies, entitling him to life benefits rather than a sickness, entitling him to benefits only until age sixty-five. The court, Kathleen MacDonald, J., granted summary disposition for the insurer, finding as a matter of law that the condition was not an accidental bodily injury. The Court of Appeals, GRIBBS, P.J., and WAHLS and R. B. BURNS, JJ., reversed in an unpublished opinion per curiam on the ground that the definition of injury under both policies was ambiguous (Docket No. 167630). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT and Justices BRICKLEY, BOYLE, RILEY, and WEAVER, the Supreme Court *held*:

The circuit court did not err in agreeing with the plaintiff's initial assessment that the nature of his disability was a sickness, not an accidental bodily injury.

Words like "injury" and "accident" can have shifting meanings, depending on the factual context and the area of law in which they are being considered. In this case, the plaintiff seeks disability benefits for an "accidental bodily injury," words of common understanding that, given their ordinary meaning, include an unexpected and unintended element. The plaintiff suffered no discrete injury. As his expert explained, carpal tunnel syndrome is the product of prolonged repetition of hand movements, and no single event caused the disability.

Justice CAVANAGH concurred only in the result.

Reversed.

Justice KELLY took no part in the decision of this case.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Carl B. Downing*), and *Weinbaum & Abbo, P.C.* (by *Peter Abbo*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert W. Powell* and *Francis R. Ortiz*) for the defendant.

PER CURIAM. The defendant insurer paid benefits to the plaintiff after he filed a claim stating that he was disabled by sickness. When those benefits were soon to expire, the plaintiff sought to recharacterize his disability as the product of an injury. The defendant refused the reclassification, and the plaintiff sued. The circuit court granted summary disposition for the defendant, but the Court of Appeals reversed on the ground that the policies' definition of "injury" was ambiguous. We reinstate the judgment of the circuit court.

I

Plaintiff Samuel A. Nehra, D.D.S., practiced dentistry for many years. It is agreed that he is disabled by carpal tunnel syndrome.[1]

---

[1] In deposition testimony, the plaintiff's expert explained this syndrome:

> The little bones that make up the wrist are called carpal bones. . . . There are eight. . . . [I]t's a U-shaped configuration and then there's a cap across . . . [s]o that makes a tunnel or canal. . . .
>
> Now, what goes through this tunnel or canal are the two flexor tendons to each of the four fingers, so there are eight tendons, and then there's an additional tendon, one from the thumb. . . . And then there's an additional structure called the median nerve that passes through this canal. . . .
>
> Now, normally there's enough room inside this tuber canal so that there's no pressure on the median nerve . . . . Around each one of these tendons, there's normally a layer of tissue we call

In 1982 and 1983, Dr. Nehra purchased disability insurance policies from defendant Provident Life & Accident Insurance Company. Both policies insured him against total disability due to "injury" or "sickness." The policies contained these definitions:

> *Injuries* means accidental bodily injuries occurring while your policy is in force.
>
> *Sickness* means sickness or disease which is first manifested while your policy is in force.

The policies did not define "accidental bodily injuries."

---

synovium that's like wet tissue paper and it—and this is the problem. The problem occurs in this layer of synovium. It becomes inflamed and when it becomes inflamed it becomes maybe 100 times thicker, very, very thick, so this adds additional substance inside this tube and nerves don't tolerate pressure.

. . . When we add substance to this inflammatory tissue, this synovial tissue, pack it inside this tube, then we're adding pressure to that nerve that passes through it and we begin to develop symptoms.

Now, when we bend our wrist, that increases the pressure inside this tube. So people first notice their symptoms when they're doing something where they've got their wrist bent, such as driving the car, talking on the telephone, reading, writing, fixing their hair, and we all sleep with our wrists bent. . . .

Now, if you add enough pressure inside this tube, it doesn't make any difference whether your wrist is bent or whether it's straight. You've got continuous pressure on this nerve and you get continuous symptoms. The more pressure you get, the more severe the symptoms. You not only get numbness and tingling, but you begin to get pain and the pain will follow that nerve, that nerve body, up into the forearm. It can go up as far as the elbow.

So, that's what— . . . . [T]hat's what you have when you have a carpal tunnel syndrome, and they're all causing pressure on this nerve, which causes the symptoms that we get and we call carpal tunnel. That's what it is.

The plaintiff's expert also explained that "dentists are prone to this type of problem . . . ."

Under the policies, benefits for disability stemming from an injury were to be paid throughout the insured's life, whereas benefits for a disability arising from sickness ended at age sixty-five.[2]

In May 1985, Dr. Nehra submitted a claim for disability benefits under the policies. On the claim form, he answered questions related to a "sickness," and left unanswered the questions relating to an "accident" or "injuries." Asked for the "[n]ature and details of sickness," Dr. Nehra answered:

> Duodenal ulcer with hemorrhage; 4/24/85—Bilateral carpal tunnel syndrome.

Provident began paying disability benefits after receiving the 1985 claim. Over time, the bleeding ulcer resolved itself, but the carpal tunnel syndrome continued.

In August 1987, Dr. Nehra sought to recharacterize his carpal tunnel syndrome as an "injury"-related disability rather than a "sickness." However, Provident refused to recognize that reclassification. When Dr. Nehra turned sixty-five in February 1993, Provident stopped paying disability benefits.

Dr. Nehra filed an April 1992 action in circuit court, seeking a declaratory judgment that his carpal tunnel syndrome was an "injury."[3] After discovery, Provident

---

[2] That is a bit of an oversimplification. The policies paid lifetime benefits for a disabling injury occurring before age sixty-five, and twenty-four months of benefits for a disabling injury occurring at or after age sixty-five. For a disabling sickness occurring before age sixty-five, the policies paid benefits to age sixty-five, but not less than twenty-four months. A disabling sickness occurring after age sixty-five would cause payment for twenty-four months.

[3] Provident removed the case to federal district court, but that court remanded the matter to circuit court.

moved for summary disposition on the ground that, as a matter of law, Dr. Nehra's condition was not an "accidental bodily injury."

The circuit court granted Provident's motion. In doing so, it relied primarily upon no-fault insurance[4] cases concerning "accidental bodily injury" in that context.[5] For example, the Court of Appeals in *Mollitor v Associated Truck Lines*, 140 Mich App 431; 364 NW2d 344 (1985), upheld a denial of no-fault benefits to a truck driver who had developed bilateral carpal tunnel syndrome, evidently from years of driving.[6] The Court of Appeals in *Mollitor* (and the circuit court in the instant case) looked to *Wheeler v Tucker Freight Lines Co, Inc*, 125 Mich App 123, 127-128; 336 NW2d 14 (1983). In *Wheeler*, the Court of Appeals reached the same outcome—a denial of no-fault benefits—for a truck driver who was disabled by back problems that developed over nineteen years of driving trucks. The *Wheeler* panel of the Court of Appeals explained:

> Reading the no-fault act as a whole, we conclude that the Legislature intended to authorize the payment of personal protection insurance benefits only for an injury sustained in a single accident, having a temporal and spatial location. Accordingly, we hold that "accidental bodily injury" as that

---

[4] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

[5] See MCL 500.3105(1); MSA 24.13105(1).

[6] The plaintiff in *Mollitor* believed that his wrist problems were traceable to an occasion when he had experienced great difficulty opening a trailer door. The jury was instructed that no-fault benefits could be awarded for an injury attributable to a "single specific accident," but that no-fault benefits "are not recoverable where the plaintiff's condition results from a series of events." *Id.* at 437. So instructed, the jury answered "no," when asked whether the plaintiff had sustained accidental bodily injury.

phrase is used in the no-fault act is an injury resulting from only such an accident.

Dr. Nehra appealed, and persuaded the Court of Appeals to set aside the summary disposition that Provident had obtained in the circuit court.[7]

The Court of Appeals said that the principles discussed in *Mollitor* and *Wheeler* were limited to the no-fault law. The Court's decision to set aside the summary disposition was largely premised on a perceived ambiguity in the phrase "accidental bodily injuries":

> Although the contract attempts to define the term "injury," the language employed may reasonably be interpreted as having multiple meanings. Put simply, it is unclear from the definition whether the *cause* or the *results* must be "accidental." Such language is not clear and unambiguous. Read as a whole, the contract requires defendant to provide disability payments when plaintiff suffers an "accidental bodily injury" during the term the policy is in force. Unfortunately, the term "accidental bodily injury" was not defined in the policy. It is unclear whether the *cause* of the injury must be unanticipated or whether the resulting *injury* must be unanticipated. [Emphasis in original.]

In making the point, the Court of Appeals noted this passage from *Collins v Nationwide Life Ins Co*, 409 Mich 271, 275; 294 NW2d 194 (1980):

> [A] distinction has arisen in many states between the term "accidental means" and the terms "accident," "accidental death," and, as used in the policy at issue, "accidental bodily injuries." This distinction is succinctly explained in 10 Couch, Insurance (2d ed), § 41:28, pp 49-50.

---

[7] Unpublished opinion per curiam, issued May 23, 1995 (Docket No. 167630), reh den August 3, 1995.

"[A]ccidental death is an unintended and undesigned result arising from acts voluntarily done, whereas death by accidental means is a result arising from acts unintentionally done or events undesignedly occurring. The term 'accidental means' refers to the occurrence or happening which produces the result, rather than the result; it is concerned with the cause of the harm rather than the character of the harm."

After the Court of Appeals denied rehearing, Provident applied to this Court for leave to appeal.

II

The Court of Appeals is correct that words like "injury" and "accident" can have shifting meanings, depending on the factual context and the area of law in which they are being considered.

For instance, the field of worker's compensation has a well-developed body of law regarding last-day-of-work injuries,[8] a concept not common elsewhere in the law. As noted above, no-fault insurance benefits for "accidental bodily injury" are payable where there has been "a single accident, having a temporal and spatial location."[9] And the "sudden and accidental" exception to the pollution exclusion in general liability policies is interpreted so that " 'sudden' includes both a temporal element and a sense of the unexpected" and " 'accidental' means unexpected and unintended."[10]

The present case is less complex than the Court of Appeals has made it appear, however. Cases like *Col-*

---

[8] See MCL 418.301(1); MSA 17.237(301)(1).

[9] *Wheeler*, 125 Mich App 127-128.

[10] *Auto-Owners Ins Co v City of Clare*, 446 Mich 1, 12; 521 NW2d 480 (1994).

*lins* (where an insured drank himself to a blood-alcohol level of 0.37 percent on November 29, 1973, and died of acute alcohol intoxication) present the issue whether foreseeable but unintended injuries suffered as the result of an intentional act (like Mr. Collins' drinking) can be deemed "accidental." *Id.* at 273. The present case is distinguishable because Dr. Nehra suffered no discrete injury. His own expert has ably explained that carpal tunnel syndrome is the product of prolonged repetition of hand movements. No single event caused the disability.

Dr. Nehra seeks disability benefits for an injury, which the policy defines as an "accidental bodily injur[y]." These are words of common understanding, and thus can be given their ordinary meaning. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161; 534 NW2d 502 (1995); *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 237; 531 NW2d 138 (1995); *Decker v Federal Life Ins Co*, 272 Mich 20, 23; 260 NW 782 (1935).

It is true that, in unusual cases, the word "accident" can be ambiguous in the sense explained in *Collins*—the distinction between an accidental (unanticipated) cause and an accidental (unintended) outcome.[11] However, the word is not ambiguous insofar as its ordinary meaning includes the temporal and spatial elements discussed in the no-fault cases.[12] Thus, if Mr.

---

[11] With slightly different policy language, this distinction was further explored in *Rynerson v Nat'l Casualty Co*, 203 Mich App 562; 513 NW2d 436 (1994).

[12] Though unnecessary to our decision today, it appears that *Collins* is best limited to its peculiar facts. In *Rynerson*, the Court of Appeals noted that the *Collins* interpretation of the phrase "accidental bodily injuries" has twice been said to pertain only to the distinction between accidental and intentional injuries. *Riesterer v Crown Life Ins Co*, 653 F2d 268

Collins had drunk himself to death over many years, gradually eroding his vital organs, instead of poisoning himself on a single occasion, there would have been no "accident" in either of the senses discussed in *Collins*. Without the temporal/spatial component, the word "accidental" adds almost nothing to the phrase "accidental bodily injuries."[13]

In the present case, Dr. Nehra himself recognized the true nature of his disability when he initially identified it as a "sickness," not an "accidental bodily injur[y]."[14] The circuit court did not err in agreeing with this assessment.

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, BOYLE, RILEY, and WEAVER, JJ., concurred.

CAVANAGH, J., concurred only in the result.

KELLY, J., took no part in the decision of this case.

---

(CA 6, 1981), *Skowronek v United Benefit Life Ins Co*, 567 F Supp 63 (ED Mich, 1983), aff'd 754 F2d 167 (CA 6, 1985). Indeed, *Skowronek* found that "a closer look discloses that the *Collins* rationale was peculiarly suited to a death by voluntary alcoholic intoxication." *Id.*, p 65.

[13] If "accidental" injury can occur naturally over a long period of time, then the only injuries that are not accidental are those that are intentionally inflicted.

[14] That is, Dr. Nehra's carpal tunnel syndrome was a sickness, as between a sickness and an *accidental* bodily injury. We do not hold that it could not, in another context, be deemed a *chronic* injury.