MOLLITOR v ASSOCIATED TRUCK LINES

Docket No. 72958. Submitted December 7, 1984, at Grand Rapids.—
Decided February 4, 1985.

Plaintiff, Edward R. Mollitor, brought an action in the Muskegon
Circuit Court against his employer, Associated Truck Lines,
and the Detroit Automobile Inter-Insurance Exchange to re-
cover no-fault benefits for accidental bodily injury. Plaintiff was
employed by Associated Truck as a tractor-semitrailer driver.
Plaintiff had been employed since 1950 and drove a route from
Muskegon to Grand Haven, Fremont and Shelby, making be-
tween 16 and 22 stops each day to deliver freight to various
customers. At each stop it was necessary for plaintiff to open
and close the rear doors of his trailer. The doors were a "roll-
up" type and measured approximately 12 feet in height and 8
feet in width. Plaintiff claimed that on October 17, 1980, he was
involved in an accident during the course of his employment
which resulted in the injury upon which his claim is based. On
that date plaintiff was driving his route while using a trailer
with which he was unfamiliar. He testified that at his first few
stops he had trouble with the rear door of the trailer because it
was difficult to open and close. When plaintiff arrived at
"Valley City" in Shelby, Michigan, he found that he was
unable to open the trailer door. Plaintiff procured a crowbar
and got another man to assist him in opening the door. Plain-
tiff had his assistant pry on the door with the crowbar while he
pulled up on the door handle with all of his strength. After the
door opened plaintiff could feel pain in his wrists and told his
assistant that he "couldn't really put any great strength to it
anymore". Over the next few days plaintiff continued to have
problems with his wrists in that they felt weak and he also
started to notice that his fingers felt cold. Finally, on October
24, 1980, his wrists bothered him so much he was unable to
work. On October 30, 1980, plaintiff visited his regular physi-
cian who referred him to an orthopedic surgeon. Plaintiff's

REFERENCES FOR POINTS IN HEADNOTE

7 Am Jur 2d, Automobile Insurance §§ 159, 340 et seq.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

condition was diagnosed as bilateral carpal tunnel syndrome. Surgery was performed to correct the condition on his left wrist in January, 1981, and on the right wrist in April, 1981. Plaintiff remained off work from October 24, 1980, until September 21, 1981, when he returned to Associated Truck and his former job, which he continued to perform up to the time of trial. During the period he was off work plaintiff received workers' compensation benefits for lost wages and medical benefits. In the circuit court action plaintiff claimed he was entitled to the additional amount by which no-fault benefits exceeded workers' compensation benefits already paid him. At trial testimony was introduced by plaintiff's expert that repetitive activities over a period of time could set up an underlying condition in the median nerve of the wrist so that sudden extreme pressure on the median nerve on any one occasion could give rise to the symptoms of carpal tunnel syndrome. Defendants' expert testified that carpal tunnel syndrome is almost always a chronic condition which develops over a long period of time and is rarely the result of traumatic injury. Evidence was also produced that plaintiff's work activities over a long period of time were a significant factor in the development of his wrist problems. The trial court instructed the jury that "accidental bodily injury" under the no-fault act is an injury which is attributable to a single specific accident. The court, Michael Eugene Kobza, J., entered a judgment on a jury verdict for defendants. Plaintiff appealed. *Held:*

The Legislature intended to authorize the payment of personal protection insurance benefits only for an injury sustained in a single accident, having a temporal and spatial location. Accidental bodily injury, as that phrase is used in the no-fault act, is an injury resulting from only such an accident.

Affirmed.

Insurance — No-Fault Insurance — Accidental Bodily Injury.

The Legislature intended to authorize the payment of personal protection insurance benefits under the no-fault act only for an injury sustained in a single accident, having a temporal and spatial location; accidental bodily injury, as that phrase is used in the no-fault act, is an injury resulting from only such an accident (MCL 500.3105[4]; MSA 24.13605[4]).

*McCroskey, Feldman, Cochrane & Brock* (by *Robert O. Chessman),* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for defendants.

Before: R. M. MAHER, P.J., and ALLEN and R. E. ROBINSON,* JJ.

ALLEN, J. Plaintiff brought this action against his employer, Associated Truck Lines, and the Detroit Automobile Inter-Insurance Exchange to recover no-fault insurance benefits to which he claimed he was entitled due to an injury to his wrists incurred while driving a truck for Associated Truck. Plaintiff claimed the injury caused him to develop bilateral carpal tunnel syndrome. A jury trial was held on the matter on July 6 and 7, 1983. On July 7, 1983, the jury returned a verdict of no cause of action against plaintiff. Plaintiff appeals as of right from the judgment entered on that verdict.

Plaintiff was employed by Associated Truck as a tractor-semitrailer driver. Plaintiff had been employed by Associated Truck since 1950 and drove a route from Muskegon to Grand Haven, Fremont and Shelby, making between 16 and 22 stops each day to deliver freight to various customers. At each stop it was necessary for plaintiff to open and close the rear doors of his trailer. The doors were a "roll-up" type and measured approximately 12 feet in height and 8 feet in width.

Plaintiff claims that on October 17, 1980, he was involved in an accident during the course of his employment which resulted in the injury upon which his claim is based. On that date plaintiff was driving his route while using a trailer with which he was unfamiliar. He testified that at his first few stops he had trouble with the rear door of the trailer because it was difficult to open and close. When plaintiff arrived at "Valley City" in Shelby, Michigan, he found that he was unable to

* Former circuit judge, sitting on the Court of Appeals by assignment.

open the trailer door. Plaintiff procured a crowbar and got another man to assist him in opening the door. Plaintiff had his assistant pry on the door with the crowbar while he pulled up on the door handle with all of his strength. After the door opened plaintiff could feel pain in his wrists and told his assistant that he "couldn't really put any great strength to it anymore". Over the next few days plaintiff continued to have problems with his wrists in that they felt weak and he also started to notice that his fingers felt cold. Finally, on October 24, 1980, his wrists bothered him so much he was unable to work.

On October 30, 1980, plaintiff visited his regular physician who referred him to Dr. Herman Hoeksema, an orthopedic surgeon. Plaintiff's condition was diagnosed as bilateral carpal tunnel syndrome. Surgery was performed to correct the condition on his left wrist in January, 1981, and on the right wrist in April, 1981. Plaintiff remained off work from October 24, 1980, until September 21, 1981, when he returned to Associated Truck and his former job, which he continued to perform up to the time of trial. During the period he was off work plaintiff received workers' compensation benefits for lost wages and medical benefits. In the circuit court action plaintiff claimed he was entitled to the additional amount by which no-fault benefits exceeded workers' compensation benefits already paid him. The parties agreed that this additional amount, if plaintiff were entitled to it, would be $12,480.29.

At trial testimony was introduced by plaintiff's expert that repetitive activities over a period of time could set up an underlying condition in the median nerve of the wrist so that sudden extreme pressure on the median nerve on any one occasion could give rise to the symptoms of carpal tunnel

syndrome. Defendants' expert testified that carpal tunnel syndrome is almost always a chronic condition which develops over a long period of time and is rarely the result of traumatic injury. Evidence was also produced that plaintiff's work activities over a long period of time were a significant factor in the development of his wrist problems.

Prior to trial, defendants renewed an earlier motion for summary judgment on grounds of this Court's decision in *Wheeler v Tucker Freight Lines Co, Inc,* 125 Mich App 123; 336 NW2d 14 (1983). Defendants argued that *Wheeler* required a single specific event in order for there to be "accidental bodily injury" under no-fault. The trial court denied the motion on grounds that there remained a question of fact as to whether or not plaintiff's bilateral carpal tunnel syndrome resulted from a single event or from a series of events over a long period of time.

At the conclusion of trial the court instructed the jury as follows:

"As used in the no-fault law the phrase accidental bodily injury means an injury which is attributable to a single specific accident. Accordingly, to recover no-fault benefits the plaintiff must demonstrate that his injury is attributable to such single specific accident. No-fault benefits are not recoverable where the plaintiff's condition results from a series of events. The purpose of no-fault insurance law is to provide compensation for injuries which are attributable to a single specific accident. The no-fault law was not designed or intended to provide compensation for injuries which arise from a series of events."

In addition to giving the foregoing instruction the trial court also refused to give one requested by the plaintiff which stated that "bodily injury is accidental as to a person claiming personal protec-

tion insurance benefits if it results from a single traumatic event or from a series of traumatic events having an identifiable spatial and temporal location". Plaintiff timely objected to the trial court's refusal to give the instruction requested by plaintiff, thus preserving the issue for appeal. Also, a verdict form containing three questions was supplied to the jury. The first question read: "Did the plaintiff sustain 'accidental bodily injury' as that term has been defined for you in these instructions?" Following deliberations the jury returned announcing that their answer to question one was "no". Whereupon, the court announced that no further answers were required and the verdict was for the defendant.

A similar issue was raised by a plaintiff and rejected by this Court on appeal in *Wheeler v Tucker Freight Lines, supra.* In that case the plaintiff, a truck driver for some 19 years, contended that he was completely disabled by back problems brought on by years of driving. The trial court granted defendant's motion for summary judgment on grounds that plaintiff had not suffered "accidental bodily injury" as that term is defined in the no-fault law.

On appeal our Court held "that the Legislature intended to authorize the payment of personal protection insurance benefits only for an injury sustained in a single accident, having a temporal and spatial location". 125 Mich App 127-128. Accordingly, the Court held that "accidental bodily injury", as that phrase is used in the no-fault act, is an injury resulting from only such an accident. The Court went on to note that Wheeler's injury arose from a series of events occurring over many years of driving. Since it was not attributable to a single accident, the Court held that, as a matter of law, Wheeler's injury was not an "accidental bod-

ily injury" under the no-fault act and that the trial court did not err in granting the defendant's motion for summary judgment.

The factual situation in the instant case differs somewhat from that of *Wheeler, supra.* Here, plaintiff is able to claim that on a certain date, October 17, 1980, he injured himself while trying to open the door of his semitrailer. However, there was considerable medical testimony adduced which showed that it was quite possible that the malady from which he was suffering, bilateral carpal tunnel syndrome, was a condition which could have developed over a long period of time. This being the case, it was proper for the trial court to instruct the jury that "no-fault benefits are not recoverable where the plaintiff's condition results from a series of events" and that "the purpose of no-fault law is to provide compensation for injuries which are attributable to a single specific accident". In doing so, the trial court accurately stated the applicable law as it was set forth by this Court in its decision in *Wheeler, supra.*

In short, summary judgment for either defendant or plaintiff would have been improper in the instant case since a question of fact was presented as to whether plaintiff's disability was the result of what occurred on October 17 when plaintiff attempted to open the door of his semitrailer or was due to years of repetitive use of plaintiff's hands and wrists while loading, unloading and driving his truck. That question was properly presented to the jury which, based on the testimony presented, decided in favor of defendants.

Plaintiff argues that *Wheeler* was improperly decided and urges this panel to adopt for no-fault litigation the same definition of "accidental" as was reached in *Sheppard v Michigan National Bank,* 348 Mich 577, 582-583; 83 NW2d 614 (1957),

and *Zaremba v Chrysler Corp,* 377 Mich 226, 230-231; 139 NW2d 745 (1966), for workers' compensation disputes. We decline the invitation. Leave to appeal was denied in *Wheeler*[1] and, though that fact is not in itself determinative of the vitality of *Wheeler,* we hesitate to take a contrary position in the absence of some indication of disapproval by the Supreme Court. Further, there is considerable merit in having different definitions for what is "accidental" in no-fault and what is "accidental" under workers' compensation.

Contrary to plaintiff's claim, *Wheeler* does not hold that a condition precipitated by an accidental injury is automatically outside the scope of the no-fault statute because it results in part from a pre-existing condition. Even under *Wheeler,* an injured party may recover if he can demonstrate that the accident aggravated a pre-existing condition. This Court so held in *McKim v Home Ins Co,* 133 Mich App 694; 349 NW2d 533 (1984).

In *McKim,* the plaintiff was a truck driver who had driven his truck to the loading dock of the Pabst Brewing Company, where he assisted in unloading beer cases full of empty bottles. During this process he evidently overexerted himself and was later diagnosed as having suffered a myocardial infarction while unloading the vehicle. The plaintiff brought suit on September 3, 1982, seeking to recover no-fault benefits from Home Insurance Company, the insurer of his employer. Summary judgment was granted in favor of Home Insurance on grounds that plaintiff did not sustain accidental bodily injury within the meaning of the no-fault act.

On Appeal the single issue presented was whether the trial court properly concluded that

[1] 418 Mich 867 (1983).

plaintiff's myocardial infarction, as a matter of law, could not be "accidental bodily injury" under MCL 500.3105(4); MSA 24.13105(4). The defendant argued that this Court, having held in *Wheeler, supra,* that no-fault benefits are payable only for an injury sustained in a single accident which has a temporal and spatial location, must also hold that benefits for myocardial infarction cannot be paid since a myocardial infarction always arises out of a series of events over a significant time frame. This Court disagreed.

In addressing the issue our Court noted that plaintiff had traced his injury to the unloading of the trailer at a specific time and place. The problem presented was that a heart attack may be inevitable because of the victim's prior habits or family history. Noting that the Supreme Court has recognized this problem, our Court stated that its interpretation of the act must deal with the nationwide acceptance of the proposition that "physical strain can 'cause' cardiac disability or death". 133 Mich App 698. The Court went on to state:

"Similarly, given the widely accepted premise that cardiovascular disabilities can be caused by physical strain, we conclude that the instant case is not one properly resolved by summary judgment pursuant to GCR 1963, 117.2(1). Whether plaintiff's myocardial infarction and the resultant disability are directly traceable to his unloading of the trailer in Milwaukee, Wisconsin, involves a factual question, presumably one to be resolved by the jury." 133 Mich App 699.

Accordingly, this Court vacated the order of summary judgment in favor of Home Insurance Company.

In the instant case plaintiff was accorded an opportunity to have the jury determine whether his injury and the resultant disability were di-

rectly traceable to his attempting to open the door of his semitrailer. The finder of fact was at liberty to find that plaintiff did suffer an injury on October 17, 1980, causing him to develop carpal tunnel syndrome, but it chose not to do so. We find no error.

Affirmed.