# STATE OF MICHIGAN

# COURT OF APPEALS

SINCERRIA LOVING,

        Plaintiff-Appellant,

and

PATRICIA GLOSSON-LOVING, formerly known
as PATRICIA GRIFFIN,

        Plaintiff,

and

SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER,

        Intervening Plaintiff,

v

BRIAN SCAGGS and USAA CASUALTY
INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
December 21, 2017

No. 333582
Oakland Circuit Court
LC No. 2015-146018-NI

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

In this automobile negligence and no-fault benefits action, plaintiff, Sincerria Loving,[1] appeals by leave granted[2] the trial court's May 6, 2016 order granting summary disposition in favor of defendant, Brian Scaggs, and partial summary disposition in favor of defendant, USAA

---

[1] Patricia Glosson-Loving (formerly known as Patricia Griffin) and Synergy Spine and Orthopedic Surgery Center are not parties to the instant appeal. Accordingly, Loving will be referred to as plaintiff in this opinion.

[2] *Loving v Scaggs*, unpublished order of the Court of Appeals, entered December 20, 2016 (Docket No. 333582).

-1-

Casualty Insurance Company (USAA), pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse the trial court and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

On January 8, 2014, plaintiff was involved in a motor vehicle accident with defendant Scaggs. Plaintiff's car was stopped at an intersection when the truck driven by Scaggs slid into the rear bumper of plaintiff's car, pushing plaintiff's car into another vehicle in front of her. Plaintiff reported soreness and pain to the responding police officer, and she was taken to the hospital. At the hospital, plaintiff reported neck pain, but she did not complain about her back. Plaintiff was determined to "clinically have a whiplash or cervical strain."

The next day, plaintiff visited her primary care physician, Dr. Barbara Menzies-Williams, because she woke up with back pain. During the visit, plaintiff reported severe pain in her lower back on the left side. Dr. Menzies-Williams further noted that plaintiff was experiencing "[s]evere pain on palpitation of the left lumbar spine" had moderate spasms, and "had difficulty with straight leg raising of the left leg. According to Dr. Menzies-Williams, plaintiff described her neck pain as 7/10 and her back pain as 10/10. The record indicates that plaintiff received follow-up medical treatment on February 21, 2014, and March 10, 2014. Plaintiff indicated during these visits that she had a history of past back and neck problems but no history of surgery on her neck or lower back. She also indicated that she had not visited a doctor for this type of pain in the past and that she had seen a chiropractor.

On March 20, 2014, plaintiff received a CT scan of her lumbar spine. It was noted regarding plaintiff's history that she had experienced left lower back pain that had persisted for two months after an accident. The results of the CT scan indicated that plaintiff had "a nondisplaced, nonhealed fracture involving the inferior articular process on the right at L2, and with extension into the right L2-L3 facet joint." It was further noted that "[t]he nondisplaced fracture involving the inferior articular process on the right at L2 appears chronic, as it was present on the previous body CT dated 10/27/2010."

On September 12, 2014, after having received further follow-up treatment related to her back pain, plaintiff underwent a surgical operation on her lower back performed by Dr. Stephen W. Bartol. Dr. Bartol noted that plaintiff's diagnosis was "[f]ractured L1 with delayed union," and he described the operation as a "[p]osterior segmental instrumentation and fusion with percutaneous pedicle screw fixation of L1-L2." Dr. Bartol further noted as follows:

> This lady presents having had a facet fracture and it is in the facet joint, and with that she has been having severe pain that has not really resolved over time. She has got delayed healing of this fracture and the pain has been severe and un-remittent and progressive, so we elected this time to go ahead and instrument and fuse the level with percutaneous approach." [Op Note by Dr. Bartol.]

Additionally, Dr. Bartol averred that "the lumbar spine CT Scan dated March 20, 2014 revealed a nondisplaced fracture at L2 extending into the right L3-L3 [sic] facet joint, L4-5

broad-based disc bulge with ligamentum flavum hypertrophy extending nito the anterior neural foramina, and an L5-S1 broad-based disc bulge." In an affidavit submitted by plaintiff during the lower court proceedings, Dr. Bartol further averred that plaintiff's "injuries, more specifically the nondisplaced fracture at L2, were either caused or exacerbated by her motor vehicle collision of January 8, 2014" and that as a result of these injuries, he had "recommended that she undergo a lumbar fusion at L1-L2, which [he] performed on September 12, 2014."

With respect to plaintiff's medical history predating the January 8, 2014 accident, there was evidence in the record that on August 10, 2009, plaintiff was given a CT scan of her head based on apparent complaints of dizziness, which revealed that plaintiff had "[n]o acute intracranial abnormality." Additionally, on October 26, 2010, plaintiff received medical treatment based on complaints of headaches, "defuse abdominal pain," and nausea. The record from plaintiff's October 26, 2010 visit showed that she had no musculoskeletal injury and no tenderness or palpation in her back. Additionally, during her deposition, plaintiff testified that before the January 8, 2014 accident, she had not been in any other car accidents, had not had any slip and fall accidents requiring medical care, and had not had any broken bones. Plaintiff also testified that she had never had any back pain or treatment for her back before the motor vehicle accident. Plaintiff further testified that she was not previously aware that she had a preexisting fracture in her back in 2010, did not receive any treatment in 2010 for that fracture, and was able to function from 2010 until the time of the accident.

On March 13, 2015, plaintiff filed the instant action, asserting a claim of negligence against Scaggs, as well as underinsured motorist and first-party benefits claims against USAA. Plaintiff alleged that she incurred neck and back injuries as a result of the traffic collision that included "a fracture at L1-L2 requiring surgical repair including posterior segmental instrumentation and fusion, among others." Plaintiff further alleged that Scaggs's negligence exacerbated any pre-existing condition that might have existed.

USAA moved the trial court for partial summary disposition under MCR 2.116(C)(10) regarding bills related to plaintiff's lumbar surgery, asserting that the surgery was performed to fuse a fracture that predated the January 8, 2014 motor vehicle accident and that the bills for this surgery were therefore non-compensable under the Michigan no-fault insurance act. Scaggs also moved for summary disposition pursuant to MCR 2.116(C)(10). Scaggs argued that the medical records showed that plaintiff's lumbar fracture predated the motor vehicle accident and was not exacerbated by accident. Additionally, Scaggs argued that plaintiff had therefore failed to show that her injuries were caused by this accident.

Defendants included with their summary disposition motions a report prepared by Dr. Louis I. Jacobs, D.O., who had conducted an independent medical evaluation (IME) of plaintiff. Following the IME, Dr. Jacobs opined that plaintiff "may have experienced transient musculoskeletal dysfunction in the form of cervical and lumbar strain, both of which are self-limiting processes and should resolve within a six-week period of time, and only occasionally would require treatment up to three months." Dr. Jacobs further opined that these strains had resolved within three months of the accident and that any subsequent treatment, including the September 12, 2014 surgical procedure, was "unrelated to the accident and was addressing a chronic preexistent fracture first noted on an earlier study of October 27, 2010." In response to

-3-

defendants' summary disposition motions, plaintiff argued that any preexisting condition was aggravated by the motor vehicle accident.

The trial court granted both defendants' motions, concluding that summary disposition was proper with respect to the claim against Scaggs because "the undisputed record evidence does not support that Scaggs' actions were the cause-in-fact of Plaintiff's injuries." With respect to USAA, the trial court concluded plaintiff had "failed to establish a genuine issue of material fact that the fracture was either caused by or exacerbated by the motor vehicle accident at issue here." The trial court also denied plaintiff's motion for reconsideration. As previously noted, this Court granted leave to appeal.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a summary disposition motion to determine if the moving party was entitled to judgment as a matter of law." *Bergman v Cotanche*, 319 Mich App 10, 15; 899 NW2d 754 (2017). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

"A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Id*. at 474-475. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A motion pursuant to MCR 2.116(C)(10) is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. "[I]t is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Innovative Adult Foster Care*, 285 Mich App at 480. Moreover, a court may not "make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks and citation omitted).

## III. ANALYSIS

With respect to USAA's motion for partial summary disposition regarding bills related to plaintiff's lumbar surgery, the Michigan no-fault insurance act, MCL 500.3101 *et seq.*, requires no-fault automobile insurers to provide first-party injury protection, commonly referred to as PIP benefits, for certain motor vehicle related injuries. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). Specifically, MCL 500.3105(1) provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." Subject to certain exceptions not applicable in

this case, PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

In this case, the trial court's ruling granting USAA's motion for partial summary disposition was predicated on the ground that the motor vehicle accident did not cause or exacerbate plaintiff's lower back fracture. This Court has stated that under MCL 500.3105, there "must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for." *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 395; 838 NW2d 910 (2013) (quotation marks and citation omitted). More specifically,

> MCL 500.3105(1) imposes two causation requirements for no-fault benefits.
>
> First, an insurer is liable only if benefits are "for accidental bodily injury . . . ." "[F]or" implies a causal connection. "[A]ccidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.
>
> Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle . . . ." It is not any bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle. [*Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005) (citation omitted; alterations in original).]

Furthermore, "[t]he causal connection between the injuries and the motor vehicle cannot be extended to something distinctly remote," and "the injuries must be more than tangentially related to the use of an automobile to trigger the entitlement to no-fault benefits." *Detroit Med Ctr*, 302 Mich App at 395 (quotation marks and citations omitted). However, an injured party may recover no fault benefits "if he can demonstrate that the accident aggravated a pre-existing condition." *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985). As our Supreme Court has explained, a plaintiff must be taken as he is found, and "[r]egardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition." *Wilkinson v Lee*, 463 Mich 388, 395, 396; 617 NW2d 305 (2000).

Here, there was evidence that plaintiff sought medical treatment for severe lower back pain on January 9, 2014, the day after the motor vehicle accident. According to the results from plaintiff's March 20, 2014 CT scan of her lumbar spine, plaintiff had "a nondisplaced, nonhealed fracture involving the inferior articular process on the right at L2, and with extension into the right L2-L3 facet joint." It was further noted in the CT scan results that the "nondisplaced fracture involving the inferior articular process on the right at L2 appears chronic, as it was present on the previous body CT dated 10/27/2010." Plaintiff's lower back issues persisted, and

Dr. Bartol eventually performed surgery on the lumbar region of plaintiff's spine to address these issues.

Dr. Jacobs opined in his report that plaintiff "may have experienced transient musculoskeletal dysfunction in the form of cervical and lumbar strain," which had resolved within three months of the accident. In this report, Dr. Jacobs further opined that any subsequent treatment, including plaintiff's surgery, was "unrelated to the accident and was addressing a chronic preexistent fracture first noted on an earlier study of October 27, 2010."

However, there was also evidence that plaintiff was not experiencing any symptoms or receiving medical treatment related to her lower back before the January 8, 2014 motor vehicle accident. Specifically, plaintiff testified during her deposition that before the January 2014 motor vehicle accident, she had not been in any other automobile accidents, had not had any slip and fall accidents requiring medical care, had not had any broken bones, and had never had any back pain or treatment for her back before this accident. Plaintiff further testified that she was not previously aware that she had a preexisting fracture in her back in 2010, did not receive any treatment in 2010 for that fracture, and was able to function from 2010 until the time of the 2014 accident. Plaintiff's medical records from 2010 also indicated that her treatment at that time was related to complaints of headaches, "defuse abdominal pain," and nausea: there is no indication in these records that plaintiff's medical treatment in 2010 was related to issues involving her lower back. The 2010 records specifically indicated that plaintiff had no musculoskelatal injury and no tenderness or palpitation in her back.

Nonetheless, the trial court seemingly ignored this evidence and therefore erroneously held that Dr. Bartol's affidavit was the "only relevant evidence offered by Plaintiff to support her assertions that the motor vehicle accident either caused or exacerbated her injuries." Even if Dr. Bartol's affidavit was conclusory and insufficient to create a genuine issue of material fact on its own, the trial court essentially engaged in improper fact-finding and weighing of the evidence by disregarding the record evidence that tended to show that any preexisting condition of plaintiff's may have been aggravated as a result of the motor vehicle accident. See, *Innovative Adult Foster Care*, 285 Mich App at 480; *Lysogorski*, 256 Mich App at 299.

Viewing the record evidence in the light most favorable to plaintiff as the nonmoving party, a jury could reasonably conclude that plaintiff had some degree of a preexisting fracture in the lumbar region of her spine that did not require medical treatment before the January 8, 2014 motor vehicle accident and that after the accident, this fracture began causing plaintiff severe pain in her lower back requiring medical treatment and eventually surgery. A reasonable jury could therefore find that the motor vehicle accident aggravated the condition in plaintiff's lower back. A motor vehicle accident may be determined to have caused trauma that triggered symptoms of a plaintiff's preexisting condition, permitting recovery for the plaintiff. *Wilkinson*, 463 Mich at 395; *Mollitor*, 140 Mich App at 438.

Although a merely coincidental, temporal relationship may not necessarily demonstrate a causal connection, see *West*, 469 Mich at 186, a plaintiff's evidence of causation at the summary disposition stage is "sufficient if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687

NW2d 380 (2004) (quotation marks and citation omitted). "[W]here conflicting theories of causation are offered in a motion for summary disposition, a trial court must consider the evidence submitted in the light most favorable to the nonmoving party." *Id*. at 150-151. In this case, the evidence that plaintiff was not experiencing any symptoms or receiving medical treatment related to her lower back before the accident but then began experiencing severe lower back pain after the accident demonstrated a "logical sequence of cause and effect." *Id*. at 150. Although it is also plausible that plaintiff's back pain was merely attributable to a preexisting condition, these conflicting theories of causation demonstrate the impropriety of granting summary disposition in this case, as well as the trial court's impermissible fact-finding in choosing one theory over the other. *Id*. at 150-151; *Lysogorski*, 256 Mich App at 299. The issue of causation is typically reserved for the trier of fact unless there is no dispute of material fact. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

Here, reasonable minds could differ regarding the extent of any preexisting condition that plaintiff may have had in the lumbar region of her spine and the extent to which the motor vehicle accident may have caused either a new injury or the exacerbation of a preexisting condition with respect to plaintiff's lumbar spine. Therefore, the trial court erred by granting USAA's partial summary disposition motion because there exist genuine issues of material fact regarding whether plaintiff's lower back injury arose out of the motor vehicle accident. MCL 500.3105(1); *Griffith*, 472 Mich at 531; *West*, 469 Mich at 183.

With respect to Scaggs' motion for summary disposition on plaintiff's negligence claim, the trial court's ruling was also based solely on the ground of causation. A negligence claim requires a showing of proximate causation. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). Demonstrating cause in fact requires the plaintiff to "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 647-648 (quotation marks and citation omitted). "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Id*. at 648 (quotation marks and citation omitted; alterations in original). As previously discussed, a plaintiff may recover based on aggravations to a preexisting condition if the aggravation was caused by the motor vehicle accident. *Wilkinson*, 463 Mich at 395.

Viewing the record evidence in the light most favorable to plaintiff as the nonmoving party establishes that a jury could reasonably conclude that any preexisting lower back injury was asymptomatic before the January 8, 2014 motor vehicle accident and was aggravated by the trauma and strain to plaintiff's back and neck that she endured during the accident. The evidence shows a "logical sequence of cause and effect" rather than a mere coincidental relationship. *Wilson*, 263 Mich App at 150. Additionally, the trial court focused only on plaintiff's lower back injuries and ignored the evidence that plaintiff was diagnosed with "whiplash or cervical strain" immediately following the accident. Based on the record evidence, a reasonable jury could conclude that it was more likely than not that plaintiff would not have suffered neck injuries or any aggravation to a preexisting lower back condition if not for Scaggs' conduct, and back and neck injuries are a foreseeable result of a driver's negligence in causing a motor vehicle

accident. Therefore, the trial court erred because there exists genuine issues of material fact regarding the cause in fact of plaintiff's injuries. *West*, 469 Mich at 183; *Wilkinson*, 463 Mich at 395-396; *Weymers*, 454 Mich at 647. As discussed above, the trial court's ruling was based on impermissible fact-finding and weighing of the evidence. *Innovative Adult Foster Care*, 285 Mich App at 480; *Lysogorski*, 256 Mich App at 299.

Finally, plaintiff argues that the trial court erred by failing to analyze whether plaintiff had established a threshold injury under MCL 500.3135. However, because the trial court granted summary disposition solely on causation grounds and did not address whether plaintiff suffered a threshold injury, there is no ruling on this matter for this Court to review. Generally, "[a]ppellate review is limited to issues actually decided by the trial court," and we therefore decline to address this issue. *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

Reversed and remanded for further proceedings consistent with this opinion. Plaintiff, having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

-8-