# STATE OF MICHIGAN

# COURT OF APPEALS

MARION MCCONKEY, a legally incapacitated person, by her guardian, DENISE ROSENBERGER,

Plaintiff-Appellant,

v

FREMONT INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
September 20, 2018

No. 340287
Lenawee Circuit Court
LC No. 15-005390-NF

Before: O'CONNELL, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right from an order granting defendant's motion for summary disposition under MCR 2.116(C)(10) in this first-party no-fault insurance case. We affirm.

This appeal arises from an automobile accident that occurred on June 9, 2014. Plaintiff, Marion McConkey, a 79-year-old woman with a history of dementia and Parkinson's disease, was the restrained front seat passenger in her Ford Focus station wagon, which was being driven by her daughter, Gloria McConkey. Gloria signaled for a left turn and slowed down to make a complete stop. At that point, plaintiff's car was rear-ended by another vehicle going approximately 55 miles per hour. Plaintiff's vehicle was extensively damaged and was not drivable after the accident. Defendant, Freemont Insurance Company, was plaintiff's automobile insurance carrier at the time of the accident.

Plaintiff was transported by ambulance to Bixby Medical Center in Adrian. Plaintiff denied any loss of consciousness and emergency responders did not report that she lost consciousness. Emergency responders noted a primary impression of "Traumatic Injury"; they stated plaintiff's chief complaint as a "breathing problem," noted that she had back pain, and observed injuries to plaintiff's "abdomen, chest," and "back of neck." Due to the nature of her injuries, plaintiff was transferred from Bixby Hospital to University of Michigan Hospital in Ann Arbor on the same day for treatment. University of Michigan Hospital records indicate:

> Evaluation for brain injury is complicated given her current delirium. In discussion with her family members it seems likely that she was not experiencing any post concussive symptoms following the accident. Given that she is currently not recalling details of the accident due to delirium, I am not able to assess for the

-1-

period of time that she may have been in post-traumatic amnesia following the accident.

Hospital records state that plaintiff "had no loss of consciousness and no head trauma; however she is not able to remember details of the accident, possibly due to her dementia." Hospital records further state that plaintiff's granddaughter reported "[plaintiff] is at her baseline mentally. She routinely sundowns at home. . . ." Hospital notes indicate that plaintiff "had a sitter at the bedside given her dementia. She was at her baseline functional status." Plaintiff's CT scan showed traumatic closed pneumothorax, right traumatic hemothorax, bilateral displaced rib fractures, and a collapsed lung. Plaintiff was "cleared from a TBI [Traumatic Brain Injury] standpoint." Plaintiff's family had reported that, prior to the accident, plaintiff was independent with her activities of daily living, including mobility, grooming, and feeding herself, but had recently moved in with her daughter who was helping her with cooking, as well as managing her finances and medications.

On June 13, 2014, plaintiff was transferred from University Michigan Hospital to Lynnwood Manor Health Care Center. Plaintiff remained at Lynwood Manor from June 14 to June 25, 2014, and was then transferred to Tendercare, an extended care facility, where she stayed to finish the rehabilitation for the physical injuries she sustained in the accident. Defendant continued to pay no-fault benefits related to plaintiff's physical injuries, including her fractured ribs, for nine months of rehabilitation at Tendercare. Although the initial plan was for plaintiff to return to her daughter's home, she was unable to do so and required long-term care in a nursing facility.

On March 23, 2015, however, defendant notified plaintiff that it would no longer pay for treatment or services rendered. An insurance medical evaluation physician, Dr. Maynard Buszek, who had examined plaintiff in August 2014, had requested that an MRI of plaintiff's brain be performed for comparison with a pre-accident MRI. The MRI was performed on January 13, 2015, and was compared to an MRI taken on April 4, 2014. "The impression was diffuse cortical atrophy, with chronic ischemic changes [which] appeared stable, no new acute intracranial process." Buszek concluded that "this information would be consistent with no structural aggravation of pre-existent pathology from the accident/incident. . . . Examinee has a diagnosis of dementia." Accordingly, defendant denied plaintiff future benefits.

On August 26, 2015, plaintiff filed this first-party no-fault action against defendant, alleging that defendant failed to pay the cost for reasonable services incurred because of injuries sustained in the car accident.

On July 12, 2017, defendant moved for summary disposition under MCR 2.116(C)(10), asserting that there was no genuine issue of material fact that plaintiff's need for long-term care in a nursing facility was not caused by the injuries she sustained in the accident. Rather, plaintiff had a long history of dementia and Parkinson's disease, as extensively documented in medical records, and these conditions were not aggravated by the accident. As the medical records also showed, plaintiff did not lose consciousness in the accident and did not suffer a head injury. In fact, immediately after the accident her family confirmed that she was at her "baseline" functional status, and she needed a "sitter" while in the hospital because of her dementia and related sundowners syndrome. Accordingly, defendant argued, plaintiff's claim failed for lack of

causation. Defendant was simply not liable for the cost of plaintiff's long-term care in a nursing facility.

Plaintiff responded to defendant's motion arguing that, although she had dementia and Parkinson's disease before the accident, she was able to walk and take care of herself. However, after this car accident, her mental and physical conditions severely declined to the extent that she required placement in a long-term care facility. Plaintiff argued that her medical records, as well as testimony from relatives and friends, supported her claim that her need for care in a nursing facility was caused by the car accident. Accordingly, defendant's motion for summary disposition should be denied.

Following a hearing, the trial court granted defendant's motion for summary disposition. The trial court noted that, although plaintiff had been able to take care of herself before the accident and was not able to do so after the accident, the evidence was insufficient to establish a causal nexus between the accident and her inability to care for herself, i.e., her need to live in a nursing care facility. After plaintiff's motion for reconsideration was denied, this appeal followed.

Plaintiff argues that a genuine issue of material fact exists as to the causal relationship between the injuries she sustained in the accident and her need for long-term care in a nursing facility after the accident. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621, 625-626; 576 NW2d 712 (1998). In ruling on such a motion, the court must consider pleadings, depositions, affidavits, admissions, or other documentary evidence submitted by the parties. MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). All evidence must be viewed in a "light most favorable to the party opposing the motion." *Id.* "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Quinto*, 451 Mich at 363.

Under the Michigan No-Fault Act, MCL 500.3101 *et seq.*, an insurer is obligated "to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions" of the No-Fault Act. MCL 500.3105(1). As our Supreme Court noted in *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005), there are two causation requirements under §3105(1)—one related to the "accidental bodily injury" component and one related to the "arising out of" component. With respect to the first causation component, "a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury" sustained in the accident. *Id.* Thus, the no-fault benefit sought must be required because of the injury sustained. With regard to the second causation component, the claimed injury must arise out of the insured's ownership, operation, maintenance, or use of a motor

vehicle as a motor vehicle. *Id.* In short, the claimed injury must have been caused by the insured's use of a motor vehicle as a motor vehicle.[1]

This case concerns the first causation component, the "accidental bodily injury" component. The issue is whether defendant is liable to pay for plaintiff's care in a nursing facility and the answer depends on whether plaintiff's need to live in the facility—the claimed benefit—is causally connected to the accidental bodily injuries she sustained in the accident. Thus, the primary focus of inquiry is on the nature of the injuries suffered in the accident. See *Wheeler v Tucker Freight Lines Co, Inc*, 125 Mich App 123, 125; 336 NW2d 14 (1983) (citation omitted). No-fault benefits may even be recovered if the claimant can prove that the accident aggravated a preexisting condition. *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985).

In this case, according to the medical records, plaintiff primarily suffered chest, lung, and rib injuries in the accident. Although it was noted shortly after the accident that a brain injury evaluation was difficult because of plaintiff's delirium, plaintiff was "cleared" from a traumatic brain injury standpoint because she did not lose consciousness in the accident, had no obvious signs of head trauma, and plaintiff's family reported that plaintiff's behavior was normal for her, i.e., she was at her "baseline functional status."

A month after the accident, on July 9, 2014, plaintiff underwent a neurological evaluation by a physician retained by defendant, Dr. Brian Kirschner, who reported that according to plaintiff's daughter, plaintiff had been unable to walk and was more confused than before the accident. Kirschner reviewed pre-accident medical records from plaintiff's primary physician, Dr. Joseph Garlinghouse, which indicated that plaintiff had Parkinson's disease, senile dementia with delusional features, daily hallucinations, and difficulty walking because of leg pain and weakness, as well as issues with her gait. Kirschner was concerned that, after the accident, "none of the treating providers felt the need to image her brain despite clear evidence of cognitive difficulties." Kirschner further stated:

> [Plaintiff] apparently has not returned to her premorbid cognitive state. While this could be due to progressive dementia, deficits related to trauma experienced during the collision cannot be excluded. Similarly, her inability to walk seems mostly due to gait apraxia. While this could be due to underlying Parkinsonism and pain inhibition, bilateral cerebral dysfunction including ischemia or even normal pressure hydrocephalies cannot be excluded. . . .
>
> Based on the history obtained, examination performed, and limited records reviewed, I conclude that [plaintiff] apparently has experienced a decline in her

---

[1] "An injury arises out of the use of a motor vehicle as a motor vehicle when 'the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' " *Boertmann v Cincinnati Ins Co*, 493 Mich 898, 898-899; 823 NW2d 842 (2012), quoting *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986).

function compared to before the motor vehicle collision. This decline is of unclear etiology, and injuries sustained during the collision cannot be excluded. I recommend that she undergo a CT of her brain without contrast to rule out . . . structural abnormalities that may have been caused during this collision. . . . This diagnostic testing is medically necessary in order to rule out trauma to the brain experienced during the collision that may have caused her functional decline.

\* \* \*

I doubt but cannot rule out that her decline in function is related to injuries sustained during this collision.

On August 19, 2014, plaintiff was evaluated by a physical medicine and rehabilitation physician retained by defendant, Dr. Buszek, who reported that after the accident plaintiff had been taken off of her medication for Parkinson's disease and significant rigidity was present. Buszek also noted that, while there was no clinical evidence of a traumatically induced pathology on examination—only Parkinsonian and rigidity—without a follow-up MRI of her brain, "there is no way to definitively conclude that there was [not] an additional brain pathology superimposed on the pre-existent pathology." Buszek noted that a pre-accident MRI from April 4, 2014 stated that there "was diffuse cortical atrophy, with chronic ischemic changes, which appeared stable, and no new acute intracranial process" which was "consistent with an individual with dementia." Buszek wanted to compare those pre-accident findings with findings obtained from a post-accident MRI.

On September 11, 2014, Kirschner submitted an addendum to his report following his review of medical records from plaintiff's personal neurologist, Dr. A. Robert Spitzer. Kirschner stated that his previous conclusions remained essentially unchanged. Plaintiff "clearly had a neurodegenerative process including dementia, Parkinsonism, and orthostatic hypotension prior to the collision." Kirschner continued to recommend brain imaging to rule out structural abnormalities that may have occurred from the accident.

It appears an MRI of plaintiff's brain was conducted on January 13, 2015, which was compared to an MRI taken on April 4, 2014. Dr. Buszek concluded that there was no structural aggravation of the preexisting conditions from the accident. Thus, defendant notified plaintiff that, effective March 24, 2015, defendant would not pay for additional treatment or services for plaintiff's care.

On January 15, 2016, another physician retained by defendant, Dr. Jay J. Kaner, who was board certified by the American Osteopathic Board of Neurology and Psychiatry, provided the following, in pertinent part, based on a review of plaintiff's medical records:

The claimant was hospitalized at the University of Michigan and then was transferred to Lynwood Manor Healthcare Center, which is a skilled nursing facility. It is noted that she remained there from June 14 to June 25th, and although the plan was for her to return to her daughter's home in Adrian, Michigan, it was found that she needed to remain in the skilled nursing facility due to progressive decline in balance, strength and functional mobility. She was

-5-

then transferred to an extended care facility in Sault Sainte Marie, Michigan, Tender Care.

* * *

From a purely neurological standpoint, [Parkinson's disease] is a progressive disorder with not only progressive neuromuscular disability but also progressive dementia. I do not feel, based on the review of these records, that this claimant was significantly impacted in a deleterious fashion by the automobile trauma.

Reviewing the records, it would certainly not surprise me to learn that this claimant may need an extended care facility for the rest of her life. However, I do not believe that one can attribute that to the automobile trauma but, rather, to the progressive neurological disorder, which was diagnosed before the accident, had been progressive and, unfortunately, will continue to be progressive.

The medical records referred to by Kaner included those from plaintiff's pre-accident primary physician, Dr. Garlinghouse, which indicated that plaintiff had Parkinson's with dementia dating back at least to 2012 and, in January 2014, plaintiff was having visual and tactile hallucinations. Garlinghouse's assessment included senile dementia with delusional features. Kaner also reviewed the medical records of plaintiff's personal neurologist, Dr. Spitzer, who was treating her for Parkinson's symptoms.

In an effort to rebut defendant's claim that her physical and mental deterioration could not be attributed to the motor vehicle accident, plaintiff obtained a statement from her pre-accident primary physician, Dr. Garlinghouse, who submitted the following:

Specifically, a statement has been requested regarding the ability of the patient to maintain her activities of daily living and her ability to live independently during the time she was my patient. We are including the office record for that time frame. In addition, I can confirm that she remained independent during that time, with assistance provided by local family members when needed. Her drastic change, while not observed by this examiner, do[es] fit a commonly observed phenomenon where a drastic physical event, either illness or trauma, often results in a permanent decrease in functioning, despite physical recovery.

The summary assessment by Garlinghouse included a diagnosis of senile dementia with delusional features and other ill-defined cerebrovascular disease. Plaintiff also relied on statements and deposition testimony from various family and friends who attested that plaintiff could, and did, essentially take care of herself before this accident.

After review of the record evidence, we agree with the trial court that plaintiff failed to establish that a genuine issue of material fact exists regarding whether she needed to live in the nursing facility because of injuries she suffered in the car accident. The only documented injuries that plaintiff suffered from the car accident were chest, lung, and rib injuries. She did not sustain a head injury. Defendant's referral physicians even questioned whether the car accident accelerated plaintiff's mental and physical decline, but the MRI results confirmed that the accident did not impact the structure of plaintiff's brain. Ultimately all of the physicians who

-6-

evaluated plaintiff after the accident agreed that plaintiff's decline resulted from the progression of her longstanding, preexisting conditions—Parkinson's disease and dementia, which were causing plaintiff significant symptoms requiring medical treatment before the accident.

While plaintiff presented a short, general statement from her primary physician—who had not seen or treated plaintiff after the accident—that a drastic physical event can result in a permanent decrease in functioning, he did not and could not definitively state that such was the case with plaintiff. "Mere speculation or conjecture is insufficient to establish reasonable inferences of causation." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003). There was simply no medical evidence that the bodily injuries plaintiff actually sustained in the accident—chest, lung, and rib injuries—caused her to require long-term care in a nursing facility. There was also no medical evidence that the accident accelerated or exacerbated plaintiff's preexisting conditions and caused her to require care in a nursing facility.

Plaintiff argues that there was an abundance of lay testimony from her relatives and friends which showed that before the accident she was independent and self-sufficient, and that after the accident plaintiff significantly declined. Plaintiff asserts that viewing this evidence in a light most favorable to her, a jury could find a causal nexus between the accident and plaintiff's need to live in a nursing facility. But plaintiff cannot establish a genuine issue of material fact regarding medical causation by relying on lay testimony from her friends and family. In *Howard v Feld*, 100 Mich App 271, 273; 298 NW2d 722 (1980), this Court stated the following regarding lay witness testimony supporting medical causation:

> A lay witness generally may testify to something he knows and that does not require expert testimony to establish, such as the existence of a physical injury. Where, however, the contested issue involves medical questions beyond the scope of lay knowledge, such as the existence *vel non* of an injury, the scope of the injury or the causal link between an alleged accident and an injury, testimony by the lay witness may be improper. [*Id.* (internal citations omitted).]

In other words, lay witnesses such as family and friends can testify that they observed that plaintiff's condition declined after the car accident. However, the issue is *why* did plaintiff's condition decline after the car accident; was it because of the natural progression of her underlying medical conditions or was it because of injuries she sustained in the car accident? This issue involves medical questions that are "beyond the scope of lay knowledge," and thus lay testimony is insufficient to prove a causal connection. *Id.* Therefore, plaintiff's use of lay testimony to establish a causal link between the accident and the progression of her preexisting conditions was insufficient to create a genuine issue of material fact regarding causation.

In summary, plaintiff failed to establish that a genuine issue of material fact exists as to the causal relationship between the injuries she sustained in the accident and her need to live in a

nursing facility after the accident.  Thus, the trial court properly granted defendant's motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto